**WILLIAMS et al. v. SMITH et al.**

No. 11835.

Court of Civil Appeals of Texas. Galveston.

Feb. 13, 1947.

Rehearings Denied March 6, 1947.

Walter H. Walne and Joseph C. Hutcheson, III, both of Houston (Baker, Botts, Andrews & Walne, of Houston, of counsel), for appellants.

Leon Jaworski and John H. Crooker, both of Houston (Fulbright, Crooker, Freeman & Bates, of Houston, of counsel), for appellees Second Nat. Bank of Houston and John H. Crooker, trustees.

Lester Settegast, of Houston, for appellees Clara Dell Allen Drouet and others.

Walter E. Boyd, of Houston, guardian ad litem for Donald B. Edwards, Jr., and others, minors.

F. L. Andrews and Andrews, Kurth, Campbell & Bradley, all of Houston, for appellee Loula Allen Smith.

GRAVES, Justice.

This appeal is from a judgment of the 61st District Court of Harris County, sitting without a jury, denying appellants not only the construction they sought of the will of Rosa C. Allen, but also the consequent distribution of the principal of her estate they claimed of right inured—in the accumulated sum of approximately $700,000.00 at the date of this trial below—to appellant, Rosa Allen Williams, and her sisters, Loula Allen Smith, and Clara Dell Drouet, share and share alike, under sections 4 and 6, of Article VI, of such will.

The court, on appellants' request, filed full findings of fact and law, in support of its judgment so adverse to them.

Despite its length, a complete copy of the will is hereto appended, as Exhibit A.

These three sisters are the surviving daughters of the testatrix, their brother, Sam Allen, her only other living child at the time of her death, having himself died—without issue—before the filing of this suit.

All three of such sisters are parties hereto, Mrs. Williams, joined pro forma by her husband, having prosecuted this suit for such construction and distribution alone, her two sisters having been made parties defendant thereto below, and now appearing as appellees in this court.

The other defendants below, who likewise are here as additional appellees, were the two trustees named by Mrs. Allen in her will, and all of her grandchildren and great-grandchildren; all parties so named have filed briefs and presented oral arguments in their own behalves in this court, respectively; wherefore, on this appeal Mrs. Williams challenges, and all the other parties, except Loula Allen Smith, make common cause in defending the trial court's stated action.

All the litigants assert the will to have been wholly unambiguous in its entirety, inclusive of cited Sections 4 and 6 of Article VI; the appellants, on their side, insisting that those two sections "contain everything found in the will that has any bearing whatever on appellants' right to recover the principal, or proceeds, of the Greater Houston Improvement Company notes.

"Section 6 of Article VI of the will makes it entirely clear that testatrix intend-

ed that her three daughters were to have distributed to them 'all payments and proceeds of payments' on all vendor's lien notes owned by her at the time of her death, provided only they were alive at the time of maturity and that the notes were collected."

The appellees, except Loula Allen Smith, in turn, state as "the basic difference" between themselves and appellants, in construing the will, in boiled-down substance, this:

"Although Section 6 of Article Six, even standing alone, will not support the construction appellant seeks, it is impossible to obtain a fair and full insight to Mrs. Allen's true intention with respect to the matters at issue by looking only to Section 6 of Article Six, or even to Article Six alone. * * *

"The Rosa Allen will divides the properties passing thereunder into two sections—the first portion consisting of certain bequests in the nature of special bequests which were to receive priority over the residuum passing under Article Six to the trustees therein named, after the payment of debts, succession taxes, administration expenses and prior bequests. It is abundantly clear from the will as a whole that the testatrix intended that the payments on notes and other such obligations having fixed maturities referred to in Section 6 of Article Six of the will, were to consist only of those that remained after the payment of debts, succession taxes, administration expenses and prior bequests, and that were delivered to the trustees as a part of the residuum and thereafter collected by them. * * *

"Further, that the testatrix did not intend for properties repossessed at foreclosure sale to be conveyed to the distributees of payments under Section 6 of Article Six, nor did the testatrix intend that upon repossession of such properties a sum of money equal to the principal of the secured notes should be paid over to said distributees."

Loula Allen Smith alone, thus gives her construction:

"The directions of Section Six (6), Article Six (6), of the will of Rosa C. Allen with respect to the distribution of the proceeds of items of fixed maturity belonging to her estate is solely a direction as to time of payment and, therefore, the debts, expenses of administration, taxes, specific bequests and other charges against the estate should have been borne pro rata by items of fixed maturity and the other properties of the estate."

These divergent views thus directly bring under review the trial court's findings of both sorts.

The appellants, as this court understands it, while challenging the admissibility of such of those of fact as were admitted in aid of the language of the will, do not question the sufficiency of the evidence to sustain any of them; wherefore, all those that are held to have been relevant must be accepted as established.

As to the conclusions of law, the parties collide head-on. In haec verba, those deemed most material were as follows:

"Findings of Fact.

"1. Rosa Allen died April 24, 1931. Her will was published on July 21, 1928, and republished on July 22, 1930, at which time she added her codicil. Her will with codicil attached was admitted to probate in Harris County, Texas, on May 12, 1931. Rosa Allen Williams, plaintiff herein and one of the daughters of Rosa Allen, was named independent executrix in the will. She duly qualified as independent executrix on May 12, 1931, and continued to serve in said capacity until December 31, 1938.

\* \* \* \* \* \*

"3. Rosa Allen left an estate of the total appraised value of $1,038,036.52, of which only $17,237.44 was in cash. Among other assets of the estate were several parcels of real estate, a substantial portion of which was made the subject of special bequests by Rosa Allen to her three daughters. Still other assets consisted of stocks, bonds, vendor's lien notes, and other accounts receivable.

"4. At the time of her death, Rosa Allen owed the First National Bank in Houston * * * $55,213.90, and * * * was accommodation endorser on notes ag-

gregating $16,000.00 * * * executed by her three daughters. * * * She owed income taxes for the year 1930, and which, together with income taxes accruing up to April 24, 1931, amounted to * * * $42,918/99. The estate and inheritance taxes paid by the Estate aggregated $50,903.46; * * * there were other debts and claims * * *, which, according to the inheritance tax report, aggregated $47,511.34, making the total debts owing by the estate $169,628.70.

"5. The condition of the testatrix estate from the time she republished her will on the 22nd of July, 1930, until the date of her death on April 24, 1931, remained substantially the same. She was borrowing money from the First National Bank in Houston at the time she republished her will and contemplated additional sizable borrowings from the bank, which she made within a few days thereafter. At the time of the execution of her will, the testatrix was aware of the fact that substantial succession taxes would have to be paid on the properties passing under her will.

"6. To liquidate the indebtedness * * * of $169,628.70, and to satisfy the cash bequests made in Articles II and V of the will, totalling $55,000.00, as well as to pay large administration expenses, plaintiff Rosa Allen Williams as independent executrix used moneys she collected from time to time on various assets of the estate, including proceeds received from sales of stocks and bonds and payments received on vendor's lien notes and other accounts. The moneys thus collected were sufficient to pay taxes, debts, expenses, and the cash bequests made in Articles II and V of the will, without the necessity of the sale of assets at unfavorable market prices. Out of the cash so collected, plaintiff, as executrix, also delivered to herself and to her two sisters in 1935 and 1936 the sum of $43,735.56, which was not authorized by the will. From stocks sold or called, Mrs. Williams as independent executrix received $104,433.38; from bonds sold or collected at maturity, she received * * * $34,-998.50; on vendor's lien notes she collected $125,534.77, and on contracts for sale of land she collected * * * $4,-666.90. Income collected by Mrs. Williams

as independent executrix to December 31, 1938, as distinguished from proceeds from principal, amounted to $100,325.77.

"Total disbursements during administration, including taxes, debts, cash bequests, administration expenses, and the $43,735.-56 delivered by plaintiff to herself and her two sisters, amounted to a total of $424,-277.33. The administration expenses were substantial, and included a total of $41,-159.15 for legal services and $30,906.92 for executrix fees.

"Prior to February, 1935, all inheritance taxes and debts of the estate were paid, and on February 5, 1935, the cash bequests provided for in Articles II and V of the will were paid.

"7. Both from the circumstances surrounding the execution and republication of the will of Rosa Allen, as well as the provisions of this will, it is plain that it was the intention of the testatrix that all cash that came into the possession of the estate during the course of administration, whether from payments on vendor's lien notes and other obligations having fixed maturities, or from other sources, was to be available for use and was to be used for the payment of debts, taxes, and cash bequests, without reference to the origin of such collections. It is equally clear, and the Court so finds, that the testatrix did not intend for assets of the estate to be sold for the payment of debts, succession taxes, expenses of the estate, and cash bequests, so long as the independent executrix of the estate was possessed of sufficient cash (regardless of the source from which the independent executrix had received such funds) for the payment of these obligations and the satisfaction of these bequests.

* * * * * *

"9. On December 31, 1938, Rosa Allen Williams, as executrix, turned over to the Second National Bank of Houston and John H. Crooker, as Trustees of the Rosa Allen Trust, the assets and properties in the possession of the executrix, and which constituted the residue of the estate, after satisfaction of all prior bequests and the payment of all debts, taxes, and administration expenses.

· "10. Among the assets of the estate were certain vendor's lien notes executed by Greater Houston Improvement Company, payment of which was secured by a first lien on 973.59 acres of land * * * in Harris County, Texas. Default in the interest payment on these notes had occurred during the lifetime of Rosa Allen; * * * foreclosure was had, and at the sheriff's sale of said property on May 4, 1937, plaintiff Rosa Allen Williams as independent executrix acquired said property by bidding the sum of $375,000.00 therefor, which bid was credited on the judgment obtained on said notes. * * * This real estate was conveyed by the Executrix to the Trustees of the Rosa Allen Trust, along with the other assets forming the residuum of the estate.

"11. On May 4, 1937, the date on which plaintiff as independent executrix bid the sum of $375,000.00 for the 973.59 acres securing the vendor's lien foreclosed, said 973.59 acres had a reasonable market value of $250,000.00.

"12. During the course of the administration of the estate of Rosa Allen, deceased, plaintiff Rosa Allen Williams several times raised the question of whether the moneys received from vendor's lien notes and other such obligations having fixed maturities, should be applied to the satisfaction of the bequests created by Articles II and V of the will and for the payment of debts, taxes, and administration expenses. She consulted her attorneys with respect to this matter and was advised by Mr. Clarence Wharton, in effect, that in his opinion the proceeds of the vendor's lien notes and other such obligations having fixed maturities, constituted a specific bequest in favor of the three daughters of Rosa Allen. The question was several times taken up with John H. Crooker, one of the attorneys for the estate and one of the prospective trustees of the Rosa Allen Trust, who consistently opposed this view, and who suggested on several occasions that a suit be filed to construe the will, if doubt existed in the plaintiff's mind as to its meaning. Although there was considerable exchange of correspondence between counsel for Rosa Allen Williams and Crooker on this question, Rosa Allen Williams proceeded to administer the affairs of the estate without obtaining any direction from a court and without filing any suit to construe the will until June 21, 1938.

* * * * * *

"14. Prior to the execution of the will and as early as February, 1922, Rosa Allen had made very substantial provision for her four children by executing trusts for their benefit. The corpus of these trust estates consisted of considerable real estate of very large values. One of these trusts (for the benefit of her four children) was to expire in February of 1942, at which time the assets were to be distributed equally between the four children, and this distribution was made in accordance with the trust directions. In addition, Rosa Allen from time to time prior to the execution of her will, had made various substantial gifts to her children. Between 1922 and the date on which Rosa Allen made her will, she had made gifts to her four children of more than one-half of her entire assets.

"Conclusions of Law.

"1. The Rosa Allen will divides the properties passing thereunder into two portions—one portion constituting certain bequests, which were to receive a preference and priority over the residuum, and the second portion constituting the residuum passing under Article VI of said will.

"2. Article VI of the will of Rosa Allen and all of its sections constitute one residuary article, and this article disposes of the entire residuary portion of the estate.

"3. The will of Rosa Allen, deceased, discloses a clear intention that under Article VI of the will there was to pass to the trustees therein named all of the assets and properties remaining, after payment of debts, succession taxes, administration expenses, and satisfaction of bequests mentioned, prior to and ahead of the residuary article.

"4. Section 6 of Article VI of the will of Rosa Allen, deceased, does not constitute a special bequest to the beneficiaries of the Rosa Allen Trust, but merely provides a plan for partial distribution by the

trustees of certain moneys collected by them on the principal of vendor's lien notes and other such obligations having fixed maturities, which remained in the residuum of the estate after the payment and satisfaction of debts, taxes, prior bequests, and administration expenses.

"5. When construed in its entirety, the will of Rosa Allen, deceased, makes it clear that the testatrix intended that the payments on notes and other such obligations having fixed maturities, referred to in Section 6 of Article VI of said will, were to be only those that remained after payment of debts, succession taxes, administration expenses, and satisfaction of prior bequests, and that were turned over into the possession of the trustees as a part of the residuum of the estate, and later collected by them.

"6. Article VI of the Rosa Allen will discloses a clear intention on the part of the testatrix that the beneficiaries of the trust therein created should not have any absolute right of ownership in the vendor's lien notes and other such obligations having fixed maturities that were collected by the executrix and the proceeds of which were used by her to pay debts, taxes, and expenses of the estate, and to satisfy bequests in Articles II and V of the will. Nor did said beneficiaries have any such right of ownership in the notes and other such obligations having fixed maturities that formed a part of the residue of the estate delivered to the trustees under Article VI. On the contrary, the title to such vendor's lien notes and other such obligations is vested in the trustees, with full power of sale, the power to change the form of investment, the right to re-invest, and generally the exclusive right to deal with these assets as they see fit, the beneficiaries being limited to the right of distribution only. Accordingly, the beneficiaries did not have any right to the delivery of these notes and other such obligations having fixed maturities, such as would exist if the disposition were in the nature of a specific bequest to them.

"7. Article I of the will of Rosa Allen, deceased, providing that 'any estate, inheritance, or death taxes, or charges, shall be paid by my executor out of the residuary portion of my estate, and shall not be charged against special bequests', discloses the clear intention of the testatrix that her bequests made prior to the residuary article of her will were to be considered in the nature of special bequests, and that nothing passing under the residuary article of her will was to be considered or construed as a special bequest. This article also shows the clear intention of the testatrix that no distinction was to be made in the use of funds collected by the executrix and necessarily used by her for the payment of the estate's debts, obligations, taxes, expenses, and the satisfaction of special bequests in Articles II and V of the will.

"8. The provisions of Section 6 of Article VI which provide for distributions to the beneficiaries of the Rosa Allen Trust solely by the trustees, and then only out of assets delivered to the trustees as the residue of the estate, show that it was the definite intention of the testatrix that payments collected by the executrix during the course of administration on vendor's lien notes and other such obligations having fixed maturities, were to be available for use by the executrix for the payment of debts, taxes, administration expenses, and cash bequests, in the same manner and to the same extent as other moneys collected by the executrix.

"9. It was proper for the Executrix to use the proceeds of vendor's lien notes and other such obligations having fixed maturities, along with other funds and assets of the estate, in the payment of debts, taxes, administration expenses, and special bequests, in lieu of selling other assets of the estate, and such procedure was in accordance with the intention of the testatrix. The testatrix did not intend for these proceeds to be frozen and remain idle during the course of administration, while other property would have to be sold at diminished prices in order to meet these obligations.

"10. By the use of the words 'all the rest and residue of my estate' at the beginning of Article VI, and other provisions of said Article, the testatrix un-

equivocally demonstrated her intention to bequeath under said article only that which remained after all debts, taxes, administration expenses, and prior bequests, had been satisfied.

"11. If the surrounding circumstances existent at the time of the execution of the will are to be considered in aid of its construction, or in explanation of its provisions, it likewise appears therefrom that the testatrix intended that all debts, taxes, and administration expenses, and prior bequests, were to be paid out of the estate as a whole, and that any payments received by the executrix on vendor's lien notes and other such obligations were to be available for use and should be used by the executrix in payment of these obligations, to the same extent as any other funds coming into her possession. These circumstances are not inconsistent with or violative of any of the terms of the will, and while the court does not consider it necessary to resort to them, in order to determine the question raised in this proceeding, it is abundantly clear that such circumstances give full support to the construction the court is giving to the will.

\* \* \* \* \* \*

■ "13. Because trustees of a testamentary trust can exercise only such authority as is vested in them by the will under which they act, the trustees in the instant case would have usurped their authority had they attempted to deliver to plaintiff and her two sisters the property obtained by the executrix on foreclosure of the Greater Houston Improvement Company notes, or paid to plaintiff and her two sisters an amount of money equal to the principal of such notes.

■ "14. It plainly appears that if the Rosa Allen will is to be construed as meaning that, upon the foreclosure of vendor's lien notes like those referred to in Section 6 of Article VI, an amount equivalent to the principal thereof had to be paid to the beneficiaries, or the property itself conveyed to the beneficiaries, the purposes of the trust would be frustrated. The court concludes from the provisions of the will that the testatrix did not intend for properties repossessed at foreclosure sale, or

taken back under cancellation of contract of sale, to be conveyed to the distributees of payments under Section 6 of Article VI, nor did the testatrix intend for a sum of money equal to the value of such property to be paid over to said distributees upon the repossession of such property.

\* \* \* \* \* \*

■ "16. Under Section 6 of Article VI of the Rosa Allen will, the trustees are confined to making distributions based on such payments as are actually received by them. A foreclosure of vendor's lien notes by the executrix of the will, and the acquisition by the executrix of property at foreclosure sale, and the subsequent delivery of such property to the trustees upon the close of administration by the executrix, does not constitute a payment received by the trustee, within the purview of Section 6 of Article VI.

■ "17. The words 'Vendor's lien notes arising from the sale to various persons, firms, and corporations of different lands formerly owned by me, as well as other notes, accounts, debts, and obligations due me, all of which have fixed maturities', as used in Section 6 of Article VI of the Rosa Allen will, were not intended by the testatrix to include and do not include corporate bonds."

This court agrees with the trial court's construction of this long, elaborate, and somewhat sui generis will, adopting its quoted findings as a correct and clear expression thereof.

That construction, too, was directly in line with the practical manner in which appellant, Mrs. Williams, had handled the manifold matters involving the same questions throughout her entire administration of her mother's estate.

■ The will may be clear—as a sort of disembodied piece of writing, when looked at on the printed pages from a relatively easy perspective, as all the parties-litigant, and even the trial court, say it is— but one further thing has been made much surer by the state of this record: It became uncertain and doubtful, indeed ambiguities were developed, when it became necessary to apply it to the labyrinthian properties Mrs. Allen's estate was found

to consist of. The parol evidence the trial court heard was admissible in aid of its recitations by analogy to the rule permitting like resort where field-notes in a deed to land become in the same way ambiguous. Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009, and cited authorities.

 That outside testimony was furthermore receivable in this instance, because it made available—in solution of the difficulties that had so arisen in the distribution of the estate—from the most authoritative sources, the circumstances attending not only Mrs. Allen's prior execution of her will, but also those surrounding her publication of it twice while she was still living. That rule is thus stated in Ellet v. McCord, Tex.Civ.App., 41 S.W.2d 110, 113:

"It is a settled rule of construction that extrinsic facts as to the subject-matter and circumstances attending the execution of a will may be shown in the aid of its interpretation, especially where its language is reasonably susceptible of two constructions. * * *

" 'Hence, the courts have always considered as of almost controlling importance on the question of the testator's intent the fact whether or not when he made his will his personal estate was sufficient to pay in full or in part the legacies therein expressed,' " etc. Long v. Long, Tex.Civ. App., 169 S.W.2d 763, error refused.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.

### Exhibit "A"

The State of Texas }
County of Harris }

Know All Men by These Presents: That I, Rosa C. Allen, a feme sole, of Harris County, Texas, being in good health and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all other wills, codicils and testaments by me heretofore made.

### Article One

I direct that all my just debts shall be paid out of my estate without delay by my executor hereinafter appointed. Any estate, inheritance or death taxes or charges shall be paid by my executor out of the residuary portion of my estate and shall not be charged against special bequests.

### Article Two

I give, devise and bequeath to Houston Land & Trust Company a corporation created under the laws of the State of Texas, having its principal office in the City of Houston, in Harris County, Texas, the sum of Five Thousand Dollars ($5,000) in trust, for the purpose of properly keeping, maintaining and beautifying my family lot in Glendale Cemetery, in Harrisburg, Harris County, Texas.

Said Trust Company shall invest, reinvest and keep invested said sum of money in such income-bearing properties and securities as it may select. The income only shall be applied to the upkeep and maintenance of said lot. Said Trust Company shall be the judge of what is necessary for that purpose. Any excess of income over the expenditures for any one year shall be available for use during any other year, but if any excess income be not used in subsequent years, then the same shall become a part of the principal. Said Trust Company shall be entitled to receive reasonable compensation for its services, in no event, to exceed ten per cent (10%) of the net income derived from said fund, shall keep an accurate account of said fund, and shall at all reasonable times permit any descendant of mine to examine the accounts in connection with such fund.

If, for any reason, said Houston Land & Trust Company does not accept the trust herein created, or having accepted it thereafter relinquishes or abandons the same, or if there be any failure or vacancy in the place of the trustee for the administration of this trust, said Five Thousand Dollars ($5,000) together with any additions thereto or income therefrom then on hand, shall pass to The First National Bank of Houston, Houston, Texas, and in such event said The First National Bank of Houston shall be the Trustee of said fund, with the same powers, duties, et cetera, as hereinabove provided.

It is my purpose and intention to provide a fund for the perpetual care, maintenance, beautification, et cetera, of said family cemetery lot, but if by reason of the operation of any rule of law, or for any other reason, said fund can be no longer employed for such purposes then the same shall pass to and become subject to the residuary clause in this will. But this provision shall not be construed as any permission to any failure to keep, maintain, beautify, et cetera, said family lot forever —it being my purpose and intention to provide for the care, maintenance, beautification, et cetera, perpetually, but if, for any reason, this cannot be done, then the same shall be done for the period expiring twenty (20) years after the death of the last surviving of my grandchildren who may be living at my death.

## Article Three

I have heretofore from time to time made statements and expressed wishes and desires that particular portions of my wearing apparel, souvenirs, family heirlooms, jewelry, furniture, house furnishings, and other like personal effects, would become the property of particular children of mine at my death. I will probably from time to time express other and additional statements, and express other and additional wishes and desires, with respect to other portions of my wearing apparel, souvenirs, family heirlooms, jewelry, furniture, house furnishings, and other like personal effects, passing to particular children. Feeling certain that my children will respect my expressed wishes in this regard I am making no specific or particular distribution of such personal property in this will, and all of the same is here given, devised and bequeathed to my four children, to be divided and distributed among them by their mutual agreement.

## Article Four

I do hereby give, devise and bequeath unto Mrs. Loula Allen Smith, Mrs. Rosa Allen Williams and Mrs. Clara Dell Allen Drouet, share and share alike, in fee simple forever, the following described property:
First Property:

All of that certain property described as Block No. One (1) of Sylvan Beach Subdivision in the Johnson Hunter League consisting of fourteen lots, together with all improvements thereon situated, and known as my bayshore home at Sylvan Beach near La Porte, in Harris County, Texas, as well as all household goods, furniture, furnishings and all personal property situated in said home or upon said block (subject to disposition of any part of said personal property under the terms of Article Three of this will).

This devise of the above described property is made with condition that neither of my said daughters will convey her interest in said property without first offering to said other two legatees the right to purchase the same at the price at which the same is to be sold. And any conveyance made by any number of said legatees less than all of them shall not be valid unless the same shall contain a statement to the effect that the legatees selling their interest therein have so offered the same to the other legatees. This provision requiring said property to be offered to the other legatees before any sale of the interest of any one of said legatees can be made shall only apply to the original three devisees above named.

Second Property:

My undivided one-half (1/2) of all of the oils, gas and other minerals, of every kind and character whatsoever situated in, upon or under certain lands situated in Brazoria County, Texas, together with all rights, privileges, franchises and immunities reserved to me in a conveyance of said lands in trust for the use and benefit of my son Samuel Milton Allen, said lands being fully described in said conveyance dated July 29, 1922, from me to Jno. T. Scott, D. W. Michaux and Frank Andrews as trustees, to which said conveyance reference is here made for better description of said lands, as well as for better description of said rights, privileges, franchises and immunities—it being my purpose to include in this bequest all property, property rights and other rights of every kind and description, reserved to grantor under said conveyance.

Should my daughter, Rosa Allen Williams, predecease me, then all of said property referred to in this article of my will shall pass to and become the property of my other two daughters, Loula Allen Smith and Clara Allen Drouet, share and share alike, and in such event I give, devise and bequeath said property to my said two daughters, or their child or children, as hereinafter provided in this article.

Should either of my said daughters (Loula Allen Smith and Clara Dell Allen Drouet) predecease me, leaving child or children who shall survive me, then such surviving child or children shall have and receive the share that would have been received by its or their mother, had such mother survived me, and in such event taking per stirpes and not per capita. If either of my said daughters (Loula Allen Smith and Clara Dell Allen Drouet) shall predecease me, leaving no child who shall survive me, but the other of my said children does survive me, or having predeceased me, leave child or children who shall survive me, then and in such event all of the property provided in this article of my will to pass to and vest in said two named daughters (Loula Allen Smith and Clara Dell Allen Drouet) shall pass to and become the property of the one of my two said children so surviving me, or of the child or children (grandchildren of mine)' or other descendant of said deceased child of mine (one of two said named daughters) as the case may be. If both of my said children (Loula Allen Smith and Clara Dell' Allen Drouet) shall predecease me, and neither leaves child or any descendant who shall survive me, then and in such event (if my said daughter Rosa Allen Williams, be then. deceased) all of such property shall pass to and become the property of my grandson, Robert C. Stuart, but in such event, if he also predecease me, then the same shall pass to and become the property of any child or children of his who may survive me; but if. there be no such child of his, then all of such property shall pass to and become the property of the child or children of my deceased sister, Orlean Lum Allen (sometimes also known as Mrs. Chas. D. Allen), per stirpes; but in such event, if there be no such child then surviving, then all of such property shall pass to and become the property of the child or children of my deceased brother, Lewis G. Lum, per stirpes; but if there be no such child of his, then all of such property shall pass and descend to my heirs, according to the Texas laws of descent and distribution now in force.

## Article Five

Section 1. It is my will and desire that there be created, and I do by this instrument create, a trust to be administered by trustees as hereinafter set forth in this article, and to be known as the "Loula Allen Smith Trust". Whenever in this article the word "trust" is used it refers to and means the "Loula Allen Smith Trust" and whenever in this article the word "trustees" is used it refers to and means the trustees of said trust.

I name, designate and appoint the Houston Land & Trust Company a private corporation, with its principal office in Houston, Harris County, Texas, and Frank Andrews, of Houston, Harris County, Texas, to be the trustees of said trust, with all of the rights, powers, authorities and duties herein given to the said trustees, and I direct that no bond shall ever be required to said trustees, and that said trustees shall act independent of and free from the control or direction of any court.

Section 2. I give, devise and bequeath to the said trustees my present home place known as 1916 Main Street in the City of Houston, Harris County, Texas, consisting of a plot of ground approximately one hundred twenty-five feet (125') square, fronting in an easterly direction on Main Street and in a southerly direction on Pierce Avenue with all improvements thereon situated, together with the sum of Fifty Thousand Dollars ($50,000) available for use in the construction of a business building thereon, if no such building is constructed thereon during my lifetime, or for such other purposes as hereinafter provided.

If, at the time of my death, I have not already erected a business building on said property, my executor shall, as soon as practicable, pay and deliver to said trustees said sum of fifty thousand dollars ($50,000), hereinabove bequeathed, available for use

in erecting a suitable business building upon said property with such conveniences as may be necessary to make it attractive to tenants and remunerative to the beneficiaries.

Upon the conveyance and delivery of said property by my executor to them, the trustees shall file in the office of the County Clerk of Harris County, Texas, a receipt for said property, as well as for the money in the event the same be payable under the terms hereof, in satisfaction of this legacy and bequest to said trust, and the filing of said receipt shall conclusively prove and determine the full payment and satisfaction of said legacy and bequest, and shall release the residue of my estate and my executor, as such, from any further responsibility therefor. The filing of said receipt by said trustees shall also serve to constitute an acceptance by them of said trusteeship.

Section 3. The trustees of said trust shall transact all business relating to the trust in the name of the "Loula Allen Smith Trust", and as such trustee shall have the broadest, fullest and most complete powers of handling and dealing with the trust property and estate, and to that end—

(a) Said trustees shall take, hold, possess and control all property of this trust.

(b) If such business building has been constructed upon said property during my lifetime, then said trustees shall make all rental contracts for the use of said building, insure the same and if destroyed or damaged to replace or repair the same, to remodel, or if unsuitable, then to remove said building and replace the same with other improvements, or rent the same unimproved, collect all rents, look after all repairs and exercise general control and supervision over the same.

(c) If no such business building is upon said property at the time of my death, then said trustees shall have the power to determine whether to construct the same or to lease said premises and property in their then condition—such right to lease being for any period of time not to exceed ninety-nine years, and any longtime lease (for fifty years or more) to provide for a grad-

uated scale of rentals increasing each ten years to correspond with reasonably contemplated enhancements in ground value. In such event, the trustees shall from time to time and as to said fifty thousand dollars ($50,000) herein provided for, have full right, authority and power to invest the same, or any part thereof, and from time to time to re-invest the same, and to make other forms of investment, from time to time, in good interest-bearing securities.

(d) Said trustees shall have the right, power and authority to sue for and collect any debt due the trust, and in their judgment to compound the same, and to adjust and compromise differences or controversies, if any there be respecting the property of the trust.

(e) Said trustees shall have the right, power and authority to employ suitable or necessary agents, servants, employes, counsel and attorneys and to pay reasonable compensation out of the trust property therefor.

Section 4. Out of the income of said trust property said trustees shall pay, first, the proper and legal charges, including taxes and other lawful charges, repairs, replacements, et cetera, against said property and/or income, and the remaining balance or net income shall be paid over monthly to the beneficiaries hereof in the following manner:

First: So long as my daughter, Loula Allen Smith, and my two granddaughters, Rosalee Allen Smith and Catherine Forrest Smith, are all living, said net income shall be divided into three equal parts, and one of such parts shall be paid directly to each of them during the balance of their natural lives.

Second: So long as my said daughter, Loula Allen Smith shall live she shall receive said one-third of said net income, but upon her death, the portion of said net income which would have been paid to her shall be paid to my said two granddaughters, Rosalee Allen Smith and Catherine Forrest Smith, (if they both survive their mother) share and share alike, during the balance of their natural lives.

Third: Upon the death of either of my said two granddaughters, Rosalee Allen

Smith and Catherine Forrest Smith, the portion of said net income which would have been paid to her shall be paid to any child or children of hers whom she may leave surviving. If either of my said two granddaughters (Rosalee Allen Smith and Catherine Forrest Smith) die, leaving no child or children surviving, then the portion of said net income which would have been paid to her shall be paid to her sister, if she be then surviving and if not, then to the child or children of such sister, if there be such child or children then surviving distribution in such event being made per stirpes.

Fourth: If at the time of the death of the last surviving of my said granddaughters (Rosalee Allen Smith and Catherine Forrest Smith) there be then surviving no child or children of either of my said two granddaughters, then if my daughter Loula Allen Smith be still alive, and for so long as she shall live, the entire income shall be paid over to her, but if she be then deceased, of if she be then living, then upon her decease this trust shall terminate and be disposed of as hereinafter provided.

In the case of all beneficiaries hereunder more than eighteen years of age, the payment of the net income to which they may be entitled shall be made directly to them as herein provided. But as to a possible beneficiary hereunder who may be less than eighteen years of age, the net income shall be paid to its duly qualified guardian, until such beneficiary attain the age of eighteen years. Said payments of such net income shall continue until the death of the last survivor of my daughter and my two granddaughters hereinabove named, and such payments shall continue to the child or children of my two granddaughters, as hereinabove provided and until the youngest of such surviving children of my two said granddaughters attains the age of twenty years.

It is expressly provided that no beneficiary hereunder shall ever have any right, title, claim or interest in, to or unto said trust estate, nor any part or parcel thereof, prior to distribution thereof, and shall have no right to convey, transfer, assign, pledge, mortgage or otherwise encumber said estate, or any part thereof, nor any interest therein. Any attempted conveyance, transfer, assignment, mortgage, pledge or encumbrance of said trust estate, or any part thereof, or any interest therein, by any beneficiary named in this instrument, prior to distribution as herein provided, shall be absolutely and wholly void, whether such conveyance, transfer, assignment, mortgage, pledge or encumbrance is intended to take place or become effective before or after the expiration of the period herein fixed for the continuance of said trust estate. If any of said beneficiaries shall undertake to convey, transfer, assign, mortgage, pledge or encumber said trust estate, or any part thereof, or any interest therein, or any distributive share therein, or any portion of the income thereof, such action on her or his part shall be construed and held to be a waiver of all interest which said beneficiary might have under the terms of this instrument, and the net income of said trust estate during the continuance of this trust shall thereafter be paid to the other beneficiaries hereunder, or the trustees may make such other disposition thereof to carry out the purposes and objects herein as to them may seem best; and said trustees shall at the expiration of this trust pay and deliver to such other beneficiaries the share in said trust estate that my beneficiary so attempting to convey, transfer, assign, mortgage, pledge or encumber said trust estate, or some part thereof, would otherwise have been entitled to receive under the terms hereof, or the trustees may make such other disposition thereof to carry out the purposes and objects herein as to them may seem best. Said trustees shall never under any circumstances be required to recognize any conveyance, transfer, assignment, mortgage or pledge by said beneficiary of any part of said trust estate; or any interest therein, and shall never be required to pay any money or thing of value thereon or therefor, nor to any creditor of said beneficiary, nor upon any debt created by any beneficiary, or by the successors of any beneficiary, for any cause whatsoever.

The trust estate hereby created is intended and designed for the sole personal use of the beneficiaries named, as herein provided, and declared, and shall never be sub-

ject to any debt, obligation and/or under-taking created in any manner whatsoever for any purpose whatsoever by any said beneficiary. Said trust estate, both principal and income shall forever be free from all court process, writs and orders, and shall never be subjected through the courts or otherwise to the payment of the debts of any beneficiary herein named, or of any one else. The title to said trust estate, in whatsoever form it may be at any time shall be absolute, complete and unassailable in said trustees. If any court process is levied or attempted to be levied upon said trust estate, or any part thereof, to secure the payment or performance of any debt, undertaking, agreement or obligation of any beneficiary herein named, then said trustees are, in their discretion, authorized to withhold payment of any amount which they might otherwise pay such beneficiary. Said trustees may make payment to the beneficiaries other than such beneficiary so violating the provisions of this paragraph in lieu of such beneficiary, if the trustees shall so elect, and shall have full power and authority in any such event to make disposition of the trust property, either income or corpus, to carry out and effect my purposes, intentions and objects as herein set forth conformably to the terms hereof.

Section 5. The trustees herein shall make a complete annual report, showing fully the operations of said estate, its assets, income and liabilities, if any, and a copy of such report shall be furnished to each of the beneficiaries herein. Each beneficiary hereunder shall be entitled to make an examination of all papers and accounts kept by said trustees, as well as an examination of any books, papers, accounts and records of any transaction with respect to the trust estate; and such examination may be made at any reasonable time by any beneficiary hereunder personally, or by any reputable person appointed by any such beneficiary for that purpose.

The Houston Land & Trust Company, one of the trustees hereunder shall receive as compensation for all of its services some reasonable compensation, to be fixed by it and to cover all of its services, hereunder, but in no event shall such compensation exceed the sum of five per cent (5%)

upon the net income which shall be derived from said premises or from handling the said funds or trust property, as the case may be. The other trustee named herein I am sure feels very friendly toward myself and my family and I feel certain would not accept compensation for his services, and, therefore, no provision is made for such compensation. Under these circumstances, it shall be the duty of the Houston Land & Trust Company to handle the details of all matters relating to this trust, to keep said records, books, accounts, et cetera, and generally to discharge all burdens devolving upon said trustees. But the other trustee named hereunder shall have equal powers and authorities with said Houston Land & Trust Company—his appointment being made because of my confidence in his business judgment and his personal friendly interest in seeing the provisions of my will carried out.

If said Houston Land & Trust Company shall at any time hereafter fail or refuse to act or become disqualified to act as such trustee, then the First National Bank of Houston, Houston, Texas, is hereby designated and appointed as substitute and successor trustee, and shall thereupon succeed to and be forthwith vested with all of the estate, rights, powers, duties and authorities herein and hereby given to the trustee in whose place it acts. And in such event it shall be entitled to the same compensation as hereinabove fixed for its predecessor.

If said The First National Bank of Houston, Houston, Texas, fails or refuses to act or become disqualified to act as such successor trustee, then any person interested in said estate, as creditor or beneficiary, may apply to any District Court in Harris County, Texas, for the appointment of a successor trustee, and said court, upon proper petition and reasonable notice, shall be vested with full power and authority to appoint a National Bank of Houston, Texas, as successor trustee for the administration of this trust estate. And in any such event any successor or substitute trustee shall have, hold and exercise all of the powers, privileges and immunities, shall assume and perform all of the duties and obligations, and shall be entitled to the

compensation, herein conferred and imposed upon said original trustee.

Should the other trustee hereinabove named fail or refuse to act or become disqualified to act as such trustee, then E. A. Peden of Houston, Harris County, Texas, is hereby designated and appointed as substitute and successor trustee, and shall thereupon succeed to and be forthwith vested with all of the estate, rights, powers, duties and authorities herein and hereby given to the trustee in whose place he acts.

But if said person shall at any time fail or refuse to act or become disqualified to act as such substitute trustee, then any person interested in said estate, as creditor or beneficiary, may apply to any District Court in Harris, County, Texas, for the appointment of a trustee, and said court, upon proper petition and reasonable notice, shall be vested with full power and authority to appoint a successor trustee for the administration of this trust estate. And in any such event any successor or substitute trustee shall have, hold and exercise all of the powers, privileges and immunities, and shall assume and perform all of the duties and obligations, herein conferred and imposed upon said original trustee.

Section 6. Under the foregoing provisions, this trust will continue at least so long as either my daughter, Loula Allen Smith, or the last survivor of my two granddaughters, Rosalee Allen Smith and Catherine Forrest Smith, shall live. Upon the death of the last survivor of my said daughter and my two said granddaughters, this trust shall conclude and terminate and all of said property belonging thereto shall be distributed and delivered to the child or children of my two said granddaughters (Rosalee Allen Smith and Catherine Forrest Smith) to whom the fee simple title (subject to this trust) is hereby given, bequeathed and devised, per stirpes and not per capita. If there be no such child surviving to take said property, then the same shall pass in fee simple to and become the property of my other two daughters, Rosa Allen Williams and Clara Dell Allen Drouet, share and share alike, if they be living, but my said daughter Rosa Allen Williams be not then living, then all of said property referred to in this article of my will shall pass to and become the property of my other child, Clara Dell Allen Drouet, and if she be not then living, then the same shall pass to and become the property of the surviving child or children of my daughter, Clara Dell Allen Drouet, passing per stirpes and not per capita; but if there be no such child surviving, I make the following disposition of said property:

First: I give, devise and bequeath to the trustees of the William M. Rice Institute for the Advancement of Literature, Science and Art, of Houston, Texas, and to their successor trustees, the sum of fifteen thousand dollars ($15,000) to be held by them in trust for the following purposes:

To invest, reinvest and keep invested said sum of fifteen thousand dollars ($15,000) in well secured first mortgage bonds, purchase money lien notes, or other secured obligations, and to collect the interest or income thereof as the same matures and to apply the same annually to defraying the expenses of two deserving students of the Institute—one boy and one girl. This donation is made by me as a memorial to my beloved husband, Samuel E. Allen, deceased; and it is my desire, and I so direct, that the principal thereof shall always be known as the "Samuel E. Allen Memorial Fund" and the income to be designated as the "Samuel E. Allen Scholarships". It is also my desire, and I so direct, that at the commencement or final exercises at the close of each scholastic year, announcements be made of the two students of the Institute who have received the benefit of this benevolence.

Second: In such event, all of the rest of the property described in this article of my will I direct shall be divided into three equal portions and in such event, I give, devise and bequeath one of said equal portions (one-third of said residue) to each of the following:

(a) To the then surviving child or children of my deceased sister, Orlean Lum Allen (sometimes known as Mrs. Chas. D. Allen) and to the then surviving child or children of my deceased brother, Lewis G. Lum, share and share alike, per capita, and if no such child be then living, then to the descendants of my said deceased sister and my said deceased brother per stirpes.

(b) To the Corporation of the Protestant Episcopal Church Council in the Diocese of Texas, for the use and benefit of its activity commonly referred to as "Camp Allen", which Camp Allen is now located on Trinity Bay in Chambers County, Texas.

(c) To the Corporation of the Protestant Episcopal Church Council in the Diocese of Texas, for the use and benefit of all other activities of the Department of Religious Education of the Protestant Episcopal Church in the Diocese of Texas.

In connection with the distribution and delivery of said property to the beneficiaries entitled thereto, as hereinabove provided, suitable conveyance or conveyances shall be made and executed by the then trustees effecting the distribution of the trust property, as hereinabove provided. Upon the execution and delivery of such conveyance or conveyances the trustees shall stand discharged.

### Article Six

Section 1. It is my will and desire that there be created and I do by this instrument create a trust to be administered by trustees as hereinafter set forth in this article, and to be known as the "Rosa Allen Trust". Whenever in this article the word "trust" is used it refers to and means said "Rosa Allen Trust", and whenever in this article the word "Trustees" is used it refers to and means the trustees of said trust.

I name, designate and appoint the First National Bank of Houston, a national banking corporation domiciled at Houston, Texas, and John H. Crooker, of Houston, Harris County, Texas, to be the Trustees of said trust, with all of the rights, powers, authorities and duties herein given to said trustees and I direct that no bond shall ever be required of said trustees, and that they act independent of and free from the control or direction of any court.

Section 2. I give, devise and bequeath to the said trustees all of the rest and residue of my property of every sort and character, real, personal and mixed, and wheresoever situated.

Upon the conveyance and delivery of said property by my executor to them the trustees shall file in the office of the County Clerk of Harris County, Texas, a receipt for the property in satisfaction of the legacy and bequest to said trust, and the filing of said receipt by said trustees shall serve to constitute an acceptance by them of said trusteeship, and shall also serve to release the executor of my estate for any further responsibility for such property.

Section 3. The trustees of said trust shall transact all business relating to said trust in the name of the "Rosa Allen Trust" and as such trustees shall have the broadest, fullest and most complete powers of handling and dealing with the trust property and estate and to that end—

(a) Said trustees shall from time to time and as to all or any part of the property of said trust have full and complete power of sale, either for cash or credit, or part cash and part credit, and with or without covenants of warranty.

(b) Said trustees shall have full right, authority, and power to invest the trust property, or any part thereof, and the proceeds thereof, or any part thereof, and from time to time to reinvest the same, and to change the form of investment from time to time. Without in any manner limiting the power of the trustees to change the form of investment, it shall always be held that, from a legal standpoint, the property herein devised to the trust, and stocks and bonds of corporations owned by me at the time of my death, are suitable and proper investments, as a matter of law, for the trust and the funds thereof. Should any law be in force at the time of my death, or thereafter be enacted, prescribing limitations upon the property which may be held or owned by a trust or by trustees in their trust capacity, such law or laws shall not be held to require (unless such holding be mandatory) this trust to change the investment of all or any part of its property or funds from the property herein devised, or against the acquiring of stock in or bonds of said corporation, or any of them, or successor or successors of said corporations or any of them.

(c) Said trustees shall have the right, power and authority to sue for and collect any debt due the trust, and in their judgment to compound the same, and to adjust and compromise the differences or contro-

versies if any there may be respecting the property of the trust.

(d) Said trustees shall have the right, power and authority to raise money by way of mortgage or pledge of trust property and to execute and deliver valid obligations of the trust for money borrowed, and shall have the right to extend, repay, reform, readjust, refinance, or otherwise deal with any obligation at any time owing by the trust, or which may be secured by lien upon property belonging to the trust, and to execute all necessary notes, bonds, liens, mortgages, deeds of trust, pledge agreements, or other instruments necessary or proper in the judgment of the said trustees.

(e) Said trustees shall have the right, power and authority to employ suitable or necessary agents, servants, employees, counsel and attorneys and to pay reasonable compensation out of the trust property therefor.

Section 4. Out of the income of the said trust property said trustees shall pay first, the proper and legal charges, including taxes and other lawful charges, against said property and/or income, and the remaining balance or net income shall be paid to the beneficiaries hereof in the following manner.

First: So long as my daughters, Rosa Allen Williams, Loula Allen Smith, and Clara Dell Allen Drouet, are all living, said net income shall be divided into three equal parts, and one of such parts shall be paid directly to each of them, during the balance of their natural lives, or until the termination of this trust and final distribution of the trust property as hereinafter provided.

Second: So long as my daughter, Rosa Allen Williams, shall live she shall receive said one-third of said net income, but if she should die before the termination of this trust and final distribution of the trust property as hereinafter provided, then the portion of said net income which would have been paid to her shall be paid to my other two daughters, Loula Allen Smith and Clara Dell Allen Drouet (if they both survive their said sister, Rosa Allen Williams) share and share alike, during the balance of their natural lives, or until the termination of this trust and final distribution of the trust property as hereinafter provided.

Third: If either of my two daughters, Loula Allen Smith and Clara Dell Allen Drouet, die before the termination of this trust and final distribution of the trust property as hereinafter provided, the portion of said net income which would have been paid to her shall be paid to any child or children of hers which she may leave surviving. If either of my two said daughters (Loula Allen Smith and Clara Dell Allen Drouet) die, leaving no child or children surviving, then the portion of said net income which would have been paid to her shall be paid to her sister, if she be then surviving, and if not then to the child, or children, of said sister, if there be such child or children then surviving, distribution in any such event being made per stirpes.

Fourth: If at the time of the death of the last surviving of my two named daughters, Loula Allen Smith and Clara Dell Allen Drouet, before the termination of this trust and final distribution of the trust property as hereinafter provided, there be then surviving no child or children of either of my said two daughters, then if my daughter Rosa Allen Williams, be still alive, and for so long as she shall live (until the termination of this trust and final distribution of the trust property as hereinafter provided) the entire net income shall be paid over to her, but if she be then deceased, or if she be then living, then upon her decease, this trust shall terminate and be disposed of as hereinafter provided.

In the case of all beneficiaries hereunder more than eighteen years of age payments of the net income to which they may be entitled shall be made directly to them as herein provided; but, as to a possible beneficiary hereunder who may be less than eighteen years of age, the net income shall be paid to its duly qualified guardian until such beneficiary attain the age of eighteen years; all of such payments to the beneficiaries being made at such regular intervals as may be reasonable and consistent with the provisions hereof, but in no event shall such payments be made less frequently than twice each year. Said payments of such net income shall continue until the termina-

tion of this trust and final distribution of the trust property as hereinafter provided.

It is expressly provided that no beneficiary hereunder shall have any right, title, claim or interest in, to or unto said trust estate nor any part or parcel thereof, prior to distribution thereof, and shall have no right to convey, transfer, assign, pledge, mortgage or otherwise encumber said estate, nor any part thereof, nor any interest therein prior to distribution thereof. Any attempted conveyance, transfer, assignment, mortgage, pledge or encumbrance of said trust estate, or any part thereof, or any interest therein, by any beneficiary named in this instrument, prior to distribution as herein provided, shall be absolutely and wholly void, whether such conveyance, transfer, assignment, mortgage, pledge or encumbrance is intended to take place or become effective before or after the expiration of the period herein fixed for the continuance of said trust estate. If any of said beneficiaries shall undertake to convey, transfer, assign, mortgage, pledge or encumber said trust estate, or any part thereof, or any interest therein, or any distributive share therein, or any portion of the income thereof, (all prior to distribution thereof), such action on her or his part shall be construed and held to be a waiver of all interests which said beneficiary might have under the terms of this instrument, and the net income of said trust estate during the continuance of this trust shall thereafter be paid to the other beneficiaries hereunder, or the trustees may make such other disposition thereof to carry out the purposes and objects herein as to them may seem best; and said trustees shall at the expiration of this trust pay and deliver to such other beneficiaries the share in said trust estate that my beneficiary so attempting to convey, transfer, assign, mortgage, pledge or encumber said trust estate, or some part thereof, would otherwise have been entitled to receive under the terms hereof or the trustees may make such other disposition thereof to carry out the purposes and objects herein as to them may seem best. Said trustees shall never under any circumstances be required to recognize any conveyance, transfer, assignment, mortgage or pledge by said beneficiary of any part of said trust estate, or any interest therein, and shall never be required to pay any money or thing of value thereon or therefor, nor to any creditor of said beneficiary, nor upon any debt created by any beneficiary, or by the successors of any beneficiary, for any cause whatsoever.

The trust estate hereby created is intended and designed for the sole personal use of the beneficiaries named, as herein provided and declared, and shall never be subject to any debt, obligation or undertaking created in any manner whatsoever for any purpose whatsoever by any said beneficiary. Said trust estate, both principal and income, shall forever be free from all court process, writs and orders and shall never be subjected, through the courts or otherwise, to the payment of the debts of any beneficiary herein named, or of anyone else. The title to said trust estate, in whatsoever form it may be at any time, shall be absolute, complete and unassailable in said trustees. If any court process is levied or attempted to be levied upon said trust estate, or any part thereof, to secure the payment or performance of any debt, undertaking, agreement or obligation of any beneficiary herein named, then said trustees are, in their discretion, authorized to withhold payment of any amount which they might otherwise pay such beneficiary. Said trustees may make payment to the beneficiaries other than such beneficiary so violating the provisions of this paragraph in lieu of such beneficiary, if the trustee shall so elect, and shall have full power and authority in any such event to make disposition of the trust property, either income or corpus, to carry out and effect my purposes, intentions and objects as herein set forth conformably to the terms hereof.

Section 5. The trustees herein shall make a complete annual report, showing fully the operations of said estate, its assets, income and liabilities, if any, and a copy of such report shall be furnished to each of the beneficiaries herein. Each beneficiary hereunder shall be entitled to make an examination of all papers and accounts kept by said trustees, as well as an examination of any books, papers, accounts and records of any transaction with respect to the trust estate; and such examination may be made at any

reasonable time by any beneficiary hereunder personally, or by any reputable person appointed by any such beneficiary for that purpose.

The First National Bank of Houston, one of the trustees hereunder, shall receive as compensation for all of its services some reasonable compensation, to be fixed by it and to cover all of its services hereunder, but in no event shall such compensation exceed the sum of five per cent (5%) upon the net income which shall be derived from said premises or from handling said funds or trust property, as the case may be. The other trustee named herein I am sure feels very friendly toward myself and my family and I feel certain would not accept compensation for his services, and, therefore, no provision is made for such compensation. Under these circumstances, it shall be the duty of the First National Bank of Houston to handle the details of all matters relating to this trust, to keep said records, books, accounts, et cetera, and, generally to discharge all burdens devolving upon said trustees. But the other trustee named hereunder shall have equal powers and authorities with said First National Bank of Houston—his appointment being made because of my confidence in his business judgment and his personal friendly interest in seeing the provisions of my will carried out.

If said First National Bank of Houston shall at any time hereafter fail or refuse to act or become disqualified to act as such trustee, then the Houston Land & Trust Company is hereby designated and appointed as substitute and successor trustee, and shall thereupon succeed to and be forthwith vested with all of the estate, rights, powers, duties and authorities herein and hereby given to the trustee in whose place it acts. And in such event it shall be entitled to the same compensation as hereinabove fixed for its predecessor.

If said Houston Land & Trust Company fails or refuses to act or become disqualified to act as such successor trustee, then any person interested in said estate, as creditor or beneficiary, may apply to any District Court in Harris County, Texas, for the appointment of a successor trustee, and said court upon proper petition and reasonable notice, shall be vested with full power and authority to appoint a National Bank of Houston, Texas, as successor trustee for the administration of this trust estate. And in any such event any successor or substitute trustee shall have, hold and exercise all of the powers, privileges and immunities, shall assume and perform all of the duties and obligations, and shall be entitled to the compensation herein conferred and imposed upon said original trustee.

Should the other trustee hereinabove named fail or refuse to act or become disqualified to act as such trustee, then Raymond Neilson, of Houston, Harris County, Texas, is hereby designated and appointed as substitute and successor trustee, and shall thereupon succeed to and be forthwith vested with all of the estate, powers, duties and authorities herein and hereby given to the trustee in whose place he acts.

But if said person shall at any time fail or refuse to act or become disqualified to act as such substitute trustee, then any person interested in said estate, as creditor or beneficiary, may apply to any District Court in Harris County, Texas, for the appointment of a trustee, and said court, upon proper petition and reasonable notice, shall be vested with full power and authority to appoint a successor trustee for the administration of this trust estate. And in any such event any successor or substitute trustee shall have, hold and exercise all of the powers, privileges and immunities and shall assume and perform all of the duties and obligations herein conferred and imposed upon said original trustee.

Section 6. Among other property included in this residuary article of my will, I now own and will in all probability at the time of my death own, a considerable number of vendor's lien notes arising from the sale to various persons, firms and corporations of different lands formerly owned by me, as well as other notes, accounts, debts and obligations due me, all of which have fixed maturities. With respect to each and all of the same I direct that the trustees hereunder deliver and distribute to the beneficiaries hereof all payments made upon the principal of each and all of said

vendor's lien notes, other notes, accounts, debts and obligations, having fixed maturities, as aforesaid, such delivery and distribution to be made from time to time in the same manner, to the same beneficiaries and exactly in accordance with the distribution of the net income as hereinabove provided in Section 4 of this article, the distributees and shares being fixed and determined from time to time in accordance with the said provisions of Section 4 of this article, based upon the date of payment to the trustees when such payment occurs on or subsequent to the fixed date of maturity, and on the date of maturity when such payment is anticipated or is made prior to the fixed maturity. If, for any reason any of said vendor's lien notes, other notes, accounts, debts or obligations having fixed maturities are not paid promptly at their respective maturities, it shall be the duty of the trustees to use their best efforts to collect the same as promptly as possible, but if in their judgment the best interest of the trust estate will be served by an extension of any of said maturities the same trustees are expressly authorized to give any such extension or extensions from time to time. On the other hand, I desire that the beneficiaries hereunder shall be paid and have distributed to them from time to time as hereinabove set out, all moneys and proceeds arising from payments upon the principal of said vendor's lien notes, other notes, accounts, debts and obligations having fixed maturities, and the trustees shall use every reasonable effort to effect such purpose. The beneficiaries entitled to receive distribution from the trustees of payments made to the trustees upon account of the particular securities or obligations referred to in this section (those having fixed maturities) will at any given time be the same persons, sharing in the same porportions, as the persons then entitled to receive the income from the trust as provided in Section 4 of this article. The provisions and directions with respect to payment of principal to beneficiaries as contained in this section shall apply only with respect to payments made upon the principal of said vendor's lien notes, other notes, accounts, debts and obligations hav-

ing fixed maturities which I may own at the time of my death, and shall not apply with respect to other property passing to the trustees under the provisions of this article. Under the powers and authorities given the trustees hereunder, it is entirely possible that they may sell or otherwise dispose of some vendor's lien notes, other notes, accounts, debts or obligations having fixed maturities, and that they may reinvest the proceeds from such sale or disposition in other property or securities or that said trustees may in some manner change the form of investment from that of vendor's lien notes, other notes, accounts, debts or obligations having fixed maturities into some form having no fixed maturity. In such event, the provisions of this section shall nevertheless apply and upon the dates from time to time of the fixed maturities as existed as of the time of my death of any of said vendor's lien notes, other notes, accounts, debts and obligations having fixed maturities, which may have been then reinvested or changed by the trustees into some form having no fixed maturity or a later maturity (this provision, however, not to apply to extensions or renewals to the same debtor) payment and distribution shall be made to the beneficiaries hereof of amounts corresponding with the payments that would have matured upon the principal of said vendor's lien notes, other notes, accounts, debts and obligations having fixed maturities had there been no reinvestment or change of form.

In like manner, it is entirely possible that said trustees may sell or otherwise dispose of some property other than such vendor's lien notes, other notes, accounts, debts and obligations having fixed maturities (including real estate, stock and all other property included in this residuary article) and reinvest the proceeds of such sale or disposition in vendor's lien notes, other notes, accounts, debts or obligations having fixed maturities, or may change the form of investment which has no fixed maturity into some vendor's lien notes, other notes, accounts, debts, or obligations having fixed maturities. And in any such event the provisions and directions for distribution contained in this section shall not apply to any payments made upon the

principal of any such vendor's lien notes, other notes, accounts, debts and obligations having fixed maturities, which may be thus acquired after my death, and in such event all of such payments shall remain a part of the corpus of this trust estate and be re-invested, held, managed, and otherwise dealt with by said trustees as part of the corpus of said trust estate until the final termination thereof as herein provided.

Section 7. All of the property covered by this residuary article of my will, the distribution of which is not accomplished under the provisions of Section 6 hereof, shall be held by said trustees, and this trust shall continue for at least so long as any of my said three daughters, Rosa Allen Williams, Loula Allen Smith, and Clara Dell Allen Drouet, shall live. If, at the death of the last surviving of said three named daughters, there be not then sur-viving any descendant or descendants of either of my two daughters, Loula Allen Smith and Clara Dell Allen Drouet then this trust shall conclude and terminate, and all of the property belonging thereto shall pass, in fee simple, to and become the prop-erty of my son, Samuel Milton Allen, if he be then living; and if he be not then living, then the same shall pass to and be-come the property of any surviving child or children of my said son, per stirpes and not per capita. But if he have no surviv-ing child or children, then the same shall pass and descend to my heirs, according to the laws of descent and distribution now in force in Texas.

If, at the death of the last surviving of my said three daughters, there be then living any descendant or descendants of my children, Loula Allen Smith or Clara Dell Allen Drouet, this trust shall continue un-til the youngest of said descendant or de-scendants who may be living at my death, shall attain the age of thirty-five years, at which time this trust shall terminate and conclude, and final distribution of the trust property be made in accordance with the terms hereof. In such event, from and aft-er the death of the last surviving of my said three daughters, the trustee shall con-tinue to administer the said trust as there-tofore, making payments of income in ac-cordance with the provisions of Section 4

hereof as theretofore, and also making partial distribution in accordance with the provisions of Section 6 hereof as thereto-fore, except that as each of the bene-ficiaries respectively attain the age of twenty-five years, there shall be paid over to such beneficiary by the trustees the one-fourth part of a proportion of the corpus of the trust estate then in the hands of the trustees corresponding to the propor-tionate part of the income from such trust estate to which said beneficiary may be then entitled; and in like manner, as each of the beneficiaries respectively attain the age of thirty years, there shall be paid over to such beneficiary by the trustees an ad-ditional one-fourth part of a proportion of the corpus of the trust estate then in the hands of the trustees corresponding to the proportionate part of the income from such trust estate to which said beneficiary may be then entitled; and in like manner, as each of the beneficiaries respectively at-tain the age of thirty-five years, there shall be paid over to such beneficiary an addi-tional one-half (being the balance to which the said beneficiary shall be entitled) of a proportion of the corpus of the trust es-tate then in the hands of the trustees cor-responding to the proportionate part of the income from such trust estate to which said beneficiary may be then entitled.

However, if the period of this trust ex-pire so that the same conclude and ter-minate under the provisions hereof prior to any or all of the beneficiaries attaining the respective ages hereinabove set out, the distribution to the beneficiaries shall be made at the expiration of the period of this trust irrespective of the ages of the beneficiaries.

In making payment of income under the provisions of Section 4 hereof, or distribu-tion of the principal under the provisions of Section 6 hereof, the trustees shall take into account any distribution theretofore made under the provisions of this para-graph.

Section 8. Anything in this will to the contrary notwithstanding the trust pro-vided for in this article, if not sooner ter-minated, shall, if all of my daughters be then deceased, expire, terminate and con-clude upon the death of the last surviving

of the children (who may be living at the date of my death) of either of my daughters Loula Allen Smith and Clara Dell Allen Drouet. In like manner, anything in this will to the contrary notwithstanding, the trust provided for in this article, if not sooner terminated, shall, if all of my daughters be then deceased, expire, terminate and conclude at the date upon which the youngest child (who may be living at the date of my death) of either of my daughters, Loula Allen Smith or Clara Dell Allen Drouet, shall attain the age of thirty-five years. Upon such termination and conclusion of the trust, distribution of the corpus of the trust property, including all accumulated income, if any, then in the hands of the trustees, shall be made by the trustees and delivered to the beneficiaries in accordance with the terms and provisions of this article.

In connection with the distribution and delivery of said property to the beneficiaries entitled thereto, as hereinabove provided, suitable conveyance or conveyances shall be made and executed by the then trustees effecting the distribution of the trust property, as hereinabove provided. Upon the execution and delivery of such conveyance or conveyances the trustees shall stand discharged.

## Article Seven

I have from time to time given substantial amounts to my said four children—to some much more than to others—and it is my desire that no account of these gifts or advancements shall be taken into consideration in the disposition of my estate. Each has been made without any reservation of title, and each is intended to be absolute and final. These gifts already made, and the differences in situation of my children and my grandchildren, and other good and sufficient reasons entirely satisfactory to me, lead me to make the disposition of my estate herein specifically provided for.

In making the disposition of my property as set forth in this will, I am fully mindful of the love and affection of my son, Samuel Milton Allen, and of my desire to help him in every way possible, but in view of rather substantial gifts heretofore made by me to him, as well as by reason of his situation, means, sex, ability, et cetera, and by reason of other good and sufficient considerations entirely satisfactory to me, I have given my property to my daughters, their children, et cetera, as herein provided. In this connection, I may add that I have not overlooked Rosa Allen Williams' son, Robert C. Stuart, but in view of his situation, means, sex, ability, resourcefulness, et cetera, and in view of other good and sufficient considerations entirely satisfactory to me, I have provided somewhat more favorably for my granddaughters—all as herein provided.

## Article Eight

If any legatee or devisee or beneficiary herein shall endeavor in any wise or in any manner or form to contest, in any court or before any tribunal, this will, on the validity thereof, or its due and proper execution, or any provision in this will contained, or shall in any way attempt to invalidate the same, or any part thereof, then and in such event such contestant shall thereafter and thenceforth cease to have any right, title or interest in or to any portion of my estate or any property devised or bequeathed hereunder or any income therefrom, and any and all provisions of this will in favor of or for the benefit of such contestant are in such event hereby absolutely revoked and any such contest shall be deemed a waiver by such contestant of any and all claims which such contestant might otherwise have in or to my said estate, or any part thereof, under the terms of this will or otherwise, and any and all rights and interest which said contestant would otherwise have had hereunder I will and direct shall be and become a part of my estate and shall be disposed of by my executor and trustees herein named in the same manner and shall pass and vest under this will in the same manner as if such contestant had died without issue prior to the date set for the distribution of my said estate. If any heir at law, or any legatee of any devisee, legatee or beneficiary under this will, shall endeavor in anywise or in any manner or form to contest in any court or before any tribunal, this will or the validity thereof, or its

due and proper execution, or any provision in this will contained, or shall in any way attempt to invalidate the same or any part thereof, then and in any such event, the legatee, devisee or beneficiary under this will whose heir at law or legatee institutes such contest shall thereafter and thenceforth cease to have any right, title or interest in or to any portion of my estate or any property devised or bequeathed hereunder or any income therefrom; and no part of my estate shall under any circumstances or conditions pass to such contestant. And in the event of any such contest all provisions in this will in favor of or for the benefit of the legatee, devisee or beneficiary hereunder whose heir at law or legatee shall institute such contest, are hereby absolutely revoked and such contest shall be deemed a waiver by such legatee, devisee or beneficiary hereunder of any and all claims which such legatee, devisee or beneficiary hereunder, or the heirs at law or the legatees of such legatee, devisee or beneficiary under this will, might otherwise have in and to my said estate or any part thereof, under the terms of this will or otherwise and no part of my estate shall by will or otherwise descend to or vest in any such contestant, and any and all rights and interest which such contestant and the legatee, devisee or beneficiary hereunder whose heir at law or legatee makes such contest would otherwise have had hereunder, I will and direct shall be and become a part of the residue of my estate, and shall be disposed of by my executor and trustees herein named in the same manner and shall pass and vest under this will in the same manner as if such legatee, devisee or beneficiary hereunder, whose heir or legatee shall make such contest, had died without issue prior to the date set for the distribution, of my said estate, and no part of my said estate shall descend to or vest in such contestant under any circumstances or conditions.

My executor and trustees shall rigidly observe this provision of my will and shall have no power or authority to relax the same in any respect whatsoever.

### Article Nine

It is my will and I so direct that my daughter, Rosa Allen Williams, be and she is hereby named and appointed executrix of this my last will and testament. In the event she predeceases me, or fails or refuses to qualify, then it is my will and I so direct that my daughter, Clara Dell Allen Drouet shall be the executrix of this my last will and testament. In the event neither of my said daughters survive me, or if they both fail or refuse to qualify or in other like event, then it is my will and I so direct that my daughter, Loula Allen Smith, shall be the executrix of this my last will and testament. In any such event no bond shall be required of any executrix named herein, and no action taken by any court except the probate of my will and the filing of an inventory, appraisement and list of claims, and said executrix shall be the independent executrix of my will without bond.

In Witness Whereof, I have executed this instrument by signing my name on this and each of the preceding pages hereof on this the 21st day of July, A. D. 1928, in the presence of Jno. H. Freeman and May Nagle who also sign on this page as witnesses at my request.

Rosa C. Allen

We, the undersigned, do hereby certify that we have on this 21st day of July, A. D. 1928, witnessed the signature and execution of the foregoing instrument by the said Rosa C. Allen, a feme sole, in our presence, who thereupon declared the same to be her last will and testament, and asked us to act as such witnesses.

Jno. H. Freeman—witness
May Nagle—witness

The State of Texas }
County of Harris }

Whereas, I, Rosa C. Allen of the County of Harris and State of Texas, did on the 21st day of July, A.D. 1928, make, publish and execute my last will and testament in the presence of Jno. H. Freeman and May Nagle, who witnessed the same at my instance and request, such will consisting of thirty-four typewritten pages, and which is now referred to as my last will; and

Whereas, I, the said Rosa C. Allen, desire to make certain changes in said will by this codicil, leaving the balance of said

will in full effect, with the exceptions herein mentioned,

Therefore, I, Rosa C. Allen still being of sound and disposing mind and memory, do make and declare this instrument to be a codicil to my aforesaid will, to be annexed and attached thereto as a part of my said last will and testament to all intents and purposes:

## I

Paragraph two of Section 5 under Article Five beginning on page 12 of my said will now reads as follows:

"The Houston Land & Trust Company, one of the trustees hereunder, shall receive as compensation for all of its services some reasonable compensation, to be fixed by it and to cover all of its services hereunder, but in no event shall such compensation exceed the sum of five per cent (5%) upon the net income which shall be derived from said premises or from handling said funds or trust property, as the case may be. The other trustee named herein I am sure feels very friendly toward myself and my family and I feel certain would not accept compensation for his services, and, therefore, no provision is made for such compensation. Under these circumstances it shall be the duty of the Houston Land & Trust Company to handle the details of all matters relating to this trust, to keep said records, books, accounts, et cetera, and generally to discharge all burdens devolving upon said trustees. But the other trustees named hereunder shall have equal powers and authorities with said Houston Land & Trust Company—his appointment being made because of my confidence in his business judgment and his personal friendly interest in seeing the provisions of my will carried out."

It is now my desire and will that the above paragraph be amended and changed so that it shall hereafter read as follows:

"The Houston Land & Trust Company, one of the trustees hereunder, shall receive as compensation for all of its services some reasonable compensation, to be fixed jointly by my said trustees and to cover all of its services hereunder, but in no event shall such compensation exceed the sum of five per cent (5%) upon the net income which shall be derived from said premises or from handling said funds or trust property, as the case may be. The other trustee named herein I am sure feels very friendly toward myself and my family and I feel certain would not accept compensation for his services, and, therefore, no provision is made for such compensation. Under these circumstances it shall be the duty of the Houston Land & Trust Company to handle the details of all matters relating to this trust, to keep said records, books, accounts, et cetera, and generally to discharge all burdens devolving upon said trustees. But the other trustee named hereunder shall have equal powers and authorities with said Houston Land & Trust Company—his appointment being made because of my confidence in his business judgment and his personal friendly interest in seeing the provisions of my will carried out."

## II

Paragraph two of Section 5 under Article Six beginning on page 22 of my said will now reads as follows:

"The First National Bank of Houston, one of the trustees hereunder, shall receive as compensation for all of its services some reasonable compensation to be fixed by it and to cover all of its services hereunder, but in no event shall such compensation exceed the sum of five per cent (5%) upon the net income which shall be derived from said premises or from handling said funds or trust property, as the case may be. The other trustee named herein I am sure feels very friendly toward myself and my family and I feel certain would not accept compensation for his services, and, therefore, no provision is made for such compensation. Under these circumstances, it shall be the duty of the First National Bank of Houston to handle the details of all matters relating to this trust, to keep said records, books, accounts, et cetera, and generally to discharge all burdens devolving upon said trustees. But the other trustee named hereunder shall have equal powers and authorities with said First National Bank of Houston— his appointment being made because of my confidence in his business judgment and his personal interest in seeing the provisions of my will carried out."

224

It is now my desire and will that the above paragraph be amended and changed so that it shall hereafter read as follows:

"The First National Bank of Houston, one of the trustees hereunder, shall receive as compensation for all of its services some reasonable compensation, to be fixed jointly by my said trustees and to cover all of its services hereunder, but in no event shall such compensation exceed the sum of five per cent (5%) upon the net income which shall be derived from said premises or from handling said funds or trust property, as the case may be. The other trustee named herein I am sure feels very friendly toward myself and my family and I feel certain would not accept compensation for his services, and, therefore, no provision is made for such compensation. Under these circumstances, it shall be the duty of the First National Bank of Houston to handle the details of all matters relating to this trust, to keep said records, books, accounts, et cetera, and, generally to discharge all burdens devolving upon said trustees. But the other trustee named hereunder shall have equal powers and authorities with said First National Bank of Houston—his appointment being made because of my confidence in his business judgment and his personal friendly interest in seeing the provisions of my will carried out."

In Witness Whereof, I have executed this codicil by signing my name on this and each of the preceding pages hereof, on this the 22nd day of July, A.D. 1930, in the presence of M. C. Chiles and Jno. H. Freeman, who witness the same at my special instance and request.

Rosa C. Allen

We, the undersigned, do hereby certify that we have on this the 22nd day of July, A.D. 1930, witnessed the signature and execution of the foregoing codicil by the said Rosa C. Allen, a feme sole, in our presence and who declared the same to be a codicil to her last will and testament dated July 21, 1928, and we hereunto sign the same as witnesses at her request and in her presence.

M. C. Chiles
Jno. H. Freeman