**LONG et al. v. LONG et al.**
No. 6567.

Court of Civil Appeals of Texas. Texarkana.
Oct. 2, 1952.

Rehearing Denied Oct. 23, 1952.

Sellers & Fanning, Sulphur Springs, Looney, Clark & Moorhead, Everett L. Looney, R. Dean Moorhead, Austin, for appellants.

Howard S. Smith, Sulphur Springs, G. C. Harris, Greenville, Dan Moody, Louis Scott Wilkerson, Austin, for appellees.

LINCOLN, Justice.

Appellants' motion for rehearing so earnestly insists that our former decision is in error, that we have again reviewed the entire case. Additional briefs have been filed by the parties. After much deliberation we have decided to withdraw our original opinion, and to substitute the following as the opinion of the court.

This appeal depends for its determination on the construction of the will of Dr. W. W. Long, deceased, consisting of the original will, dated December 21, 1934, the first

codicil, December 22, 1934, and the second codicil, June 17, 1938.

Dr. Long died in Sulphur Springs on January 11, 1942. The will was duly probated upon the application of the surviving wife, Mrs. Callie Long, who was appointed independent administratrix. She qualified as such and administered the estate until her death intestate on July 4, 1945. There was no administration on her estate and no necessity therefor.

All the property owned and possessed by Dr. Long at the time of his death was the community of him and his wife Callie Long. They had four sons, McGee Long, Dr. Frankie Long, N. D. Long and Johnny L. (Lester) Long. Mary Neel Libbe was a daughter of N. D. Long, and a granddaughter of Dr. Long and Callie Long.

The appellants, plaintiffs in the court below, are the surviving wife and children of Lester Long, who died intestate February 23, 1950. There was no administration on his estate, and no necessity therefor. Their suit against McGee Long was in trespass to try title for an interest in certain real estate described in the petition, which had not been disposed of by Mrs. Long prior to her death; for an accounting; for rents and revenues collected by him and for the amount of a fund set up by McGee Long in the City National Bank of Sulphur Springs to the credit of and for the use and benefit of Lester Long, alleged to be about $4,000. It was contended that the interest sued for was that which belonged to Lester Long under the will of his father, and that said will set up the corpus of said fund in the City National Bank as trustee of a spendthrift trust in Lester's favor. It was also contended by the plaintiffs that the will of Dr. Long disposed of the entire community interest of him and his wife; that Callie Long accepted under the will; that the interest of Lester Long under the will was one-fifth of the entire community estate remaining at the time of Mrs. Long's death; and that the conveyance and transfer by Lester Long of his interest under the will to McGee Long was void, said interest being inalienable by him as an incident of the spendthrift trust set up in his behalf un-

der terms of the will. The City National Bank of Sulphur Springs was a party to the suit.

The appellees, defendants and cross-plaintiffs below, are the two original defendants, McGee Long and the Bank. All persons interested in the subject matter of the suit also were made parties and were before the court. It is appellees' contention that by the second codicil of the will Dr. Long gave all his interest in the real estate to his surviving wife in fee simple, and that such provision in the second codicil nullified the alleged trust provision set up in the original will; that Lester's interest was acquired by him solely from his mother by descent and distribution, and that his conveyance and transfer of his entire interest in the estate was valid.

At conclusion of the evidence it was agreed by the court and all the parties and their attorneys that no issues of fact for jury determination had been raised by the evidence, the case was withdrawn from the jury by consent, and all matters of fact and of law were submitted to the court. The following are substantially the findings and conclusions of the trial court as disclosed by the judgment: (1) The will devised all personal property of Dr. Long's estate to his wife absolutely,—(appellants concede that fact and no issue is raised on it); (2) the last codicil gave all real estate of deceased to Mrs. Long absolutely and in fee simple, "with no limitation or restraint"; (3) upon death of Mrs. Long the entire estate then remaining, real and personal, passed by descent and distribution absolutely and in fee simple to her sole surviving heirs at law; (4) on May 21, 1947, Lester Long (Johnny L.) sold, transferred and conveyed by valid conveyances and assignments his entire interest in all the real and personal property then existing and formerly belonging to the estates of his mother and father to McGee Long, including the alleged trust fund in the City National Bank; (5) all relief sought by plaintiffs was denied, and judgment was renderd that plaintiffs take nothing by their suit. Upon cross-action by McGee Long his title to property conveyed and transferred to him by Lester

Long was quieted and clouds thereon removed.

Pertinent portions of Dr. Long's original will and codicils are as follows:

*Fourth Paragraph:* "It is my will and desire that all of my property, both real and personal, I may die seized and possessed of, including all real estate which I now own or may hereafter acquire and all personal property of every kind and description which I now own or may hereafter acquire, after the payment of my debts and expenses as set out above, shall pass to and vest in my beloved wife, Callie Long, all of my personal property to pass to and vest in her in full and complete ownership and title and all of my real estate, excepting as herein otherwise provided shall pass to and vest in her in full and complete fee simple title, excepting that she shall not have the right and power to sell and dispose of any of such real estate, excepting the filling station property situated on the East side of Church Street in the City of Sulphur Springs. This property she shall have the right to sell and dispose of as she may desire and pass good title thereto. That is, I am giving and leaving to my said beloved wife Callie Long all of my personal property and the personal assets of my estate to handle, use, dispose of or reinvest as she may desire and am giving to her any and all of my real estate which I may own at the time of my death for her to have the complete use and possession thereof and to receive for her own individual use and benefit any and all income therefrom and to have any and all uses, benefits and powers whatsoever, excepting that she shall not sell any of the same excepting the particular piece of property above referred to.

*Fifth Paragraph:* "It is my wish in a suggestive manner that in the event the income from my property to be received by my said wife shall be more than used by her for her support and maintenance and shall accumulate a surplus that she reinvest the same in the most profitable way she may find in other revenue. bearing real estate, preferable, well located filling stations, seeking the advice of my boys Frankie and McGee in making such investment

or investments. In this connection it is my desire that my wife have no limitations thrown around her by any stipulation in this will as to the amount of the income from such real estate that she may use, it being my wish that she use any and all of the same that she may wish and desire, to the extent of all if necessary.

*Sixth Paragraph:* "At the time and following the death of my said wife it is my desire and I hereby direct that my real estate which is to be kept by her as herein directed shall descend and vest in my beloved children in the manner and share as my said wife may direct in her will, subject to the following limitations and conditions: I desire that my granddaughter, Mary Noel Libbe, shall receive a child's share and portion of such property, the amount and extent of which I leave to be governed and directed by my wife; and in the event my son Lester Long shall precede my said wife in death then it is my will and direction that all of my such property as might be given or go to him shall go to and be received by my other children, jointly and equally, or to their heirs in the event of their death, this however in the event my said son Lester Long has no children excepting those he has by his first wife, in the event he has children at the time of his death by his present or some future wife then it is my wish that such child or children receive his share as may be so directed by his mother and my wife.

*Seventh Paragraph:* "It is my desire and direction that such interest, share, or amount of my estate as may go to my said granddaughter, Mary Noel Libbe, and my son Lester Long, be not given to them in bulk but be held in trust for their benefit and paid to them in monthly payments. This I leave for the direction of my wife, but in the event following her death she shall for any reason fail to make such a provision then I direct that their such portions shall be deposited or turned over to the City National Bank of Sulphur Springs, Texas, or its successor, and be held by it as a trust fund for said two parties, and Mary Noel Libbe be paid the sum of $40.00 per month and said Lester Long the sum of $50,-00 per month. In the event said Bank nor

its successor shall be operating following the death of my wife then I direct that the then County Judge of Hopkins County, after consulting with my sons Frankie & McGee shall choose a proper and safe trustee to perform such Trust requiring of him or it proper and sufficient Bond to guarantee the safety of such property. This direction to become absolute and in force unless as above stated my said wife shall direct such trust for said parties in some other way and manner and make choice of a different Trustee."

Omitting formal portions, the first codicil is as follows:

"Considering and realizing that the Hospital Building and property located in the City of Sulphur Springs on Atkins Street might become unprofitable to keep and operate as a hospital following my death and therefore might not be profitable to be kept by my wife as a part of my estate until her death, it is my desire and I here and now direct that she, my said wife, Callie Long shall have the right, power and authority to sell said property at any time and convey good and complete title thereto; provided she and my son Dr. Frankie Long shall consider and decide that it is not profitable and good business judgment to keep said property and operate or have the same operated as a hospital. The fact that my said son shall join my said wife to a deed conveying said property shall be sufficient evidence of such conclusion on their part, and I give said property to her in fee simple, conditioned only that my said son shall join her and sign the deed to same to pass good title thereto.

"It is my desire that all the remaining portion of said original will, not changed by this codicil, shall remain in full force and effect."

Omitting formal portions, the second codicil is as follows:

*Second Paragraph:* "In the 4th paragraph of my original will, I have limited the right of my wife, Callie Long, following my death in the sale of real estate passing to her under said original will. Such provisions in said paragraph of said original will giving my said wife the right to sell the hospital with the joinder of my son, Frankie Long, and filling station property on Church Street, and giving no further right to her to sell any of the other property. It is now my desire to change said features and portions of said paragraph in such respect and I now desire that my said wife, Callie Long, shall have the right to sell any and all of the real estate which she may own following my death, and which passes to her under my will provided she consults with and has the permission of our two sons, Dr. Frankie Long and McGee Long. That is, I now give and devise to my said wife all real estate of whatsoever kind which I may own at the time of my death in fee simple to handle, manage, use and dispose of as she may desire to do, subject only to the condition that she must be joined in the sale of any and all real estate by my said two sons. The fact that our said two sons join with my said wife in the execution of a deed to any of such real estate shall be sufficient evidence of their joinder and approval of such sale.

*Third Paragraph:* "In the 6th paragraph of my original will, I provided the following provision and recitation: 'and in the event my son Lester Long shall precede my said wife in death, then it is my will and direction that all of my said property as might be given or go to him, shall go to and be received by my other children, jointly and equally, or to their heirs in the event of their death, this however, in the event my said son Lester Long has no children excepting those he has by his first wife, in the event he has children at the time of his death by his present or some future wife, then it is my wish that such child or children receive his share as may be so directed by his mother and my wife.' It is now my desire to change said portion and I do hereby change the same and eliminate all of the above quoted portion from my said will and hereby substitute therefor the following: And in the event my son, Lester Long shall precede my said wife in death, then it is my will and direction that all of the property which the

said Lester Long would heir and receive upon the death of my wife, his mother, shall go to and be received by his legal heirs at law, making his property descend and be handled in the same way as my other children. It is my desire that all of the remaining portions of my previous will and codicil not directly changed by this codicil shall remain in full force and effect."

Counsel for both sides have shown commendable zeal and prodigious research in quest of authorities involving construction of wills presenting questions similar to those under consideration. Wills in most cases vary in the language and expressions used by a testator. "The will to be construed is rarely in exactly the same language as another will construed in any reported case, but is usually a thing unto itself." Darragh v. Barmore, Tex. Com.App., 242 S.W. 714, 716; Sailer v. Furche, Tex.Com.App., 22 S.W.2d 1065, 1068. So, while we must examine and analyze the reported cases, and we welcome those considered applicable, yet each case ultimately must depend upon the particular language used in the ascertainment of the intentions of the testator. In doing this we must be guided by well-established rules laid down by our courts. The first and foremost of these rules is that the entire instrument, including all codicils, must be looked to in arriving at the testator's intention; and it is not proper to arrive at such intention from isolated portions only. Sailer v. Furche, Tex.Com.App., 22 S.W. 2d 1065; Norton v. Smith, Tex.Civ.App., 227 S.W. 542, writ dismissed.

The doctrine of election by the wife applies where the will of the husband disposes of property belonging to both spouses and at the same time makes provision for the wife to compensate her for the loss of her rights or of ownership. 44 Tex.Jur., p. 865, Sec. 287. Obviously, no election is required if the will disposes of the testator's property only.

A presumption obtains that the testator intended to confine his devise or bequest to his part of the property. Sailer v. Furche, supra; Medlin v. Medlin, Tex.Civ.

App., 203 S.W.2d 635, 640, writ refused; Baldwin v. Baldwin, 134 Tex. 428, 135 S. W.2d 92; 44 Tex.Jur., p. 867, 868. To overcome this presumption, the will must express a purpose to dispose of the wife's part of the property as well as his own, Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Moss v. Helsley, 60 Tex. 426, in clear and unequivocal language, Dakan v. Dakan, supra; Avery v. Johnson, 108 Tex. 294, 192 S.W. 542; or such purpose "should arise from the strongest and most necessary implication", Packard v. De Miranda, Tex.Civ.App., 146 S.W. 211, 214, writ refused. In Avery v. Johnson, supra [108 Tex. 294, 192 S.W. 544], Chief Justice Phillips wrote, "for a will to be given the effect of an attempted disposition of property not owned by the testator, it is required that the language of the will conclusively evidence such a purpose." And, as said in C. C. Young Memorial Home for Aged Women v. Nelms, Tex.Civ.App., 223 S.W.2d 302, 304, it must be "open to no other construction." Avery v. Johnson, supra, citing cases.

Ordinarily, the use of such expressions as "my property," "my estate," and like terms, by a testator, has been held to negative an intention to dispose of property not his own. Ford v. Bachman, Tex. Civ.App., 203 S.W.2d 630, n. r. e.; Pope v. Pope, Tex.Civ.App., 175 S.W.2d 289. In those cases where, notwithstanding the use of such terms, the courts have held an election was required, other provisions were found in the will clearly and unequivocally expressing the testator's intention to dispose of property other than his own.

If there is ambiguity in the provisions of the will regarding the testator's intention in the respect now under consideration; or if "a careful consideration of all the provisions of the will * * * leaves us unable to say either that it conclusively appears that the intention of the testator was to dispose of the entire community estate or that the language used is fairly susceptible of no other construction," then the presumption earlier referred to has not been overcome, and the will must be held to have disposed of the testator's property, rights and interest only.

Sailer v. Furche, supra; authorities cited above.

■ Applying the foregoing rules to the case now before us, we think the language used throughout the will and codicils evidences a purpose to dispose of property belonging to Dr. Long only. Throughout the instruments we find such expressions as "all my property, both real and personal, I may die seized and possessed of," "all my real estate which I now own or may hereafter acquire," "all personal property * * which I now own or may * * * acquire," "personal assets of my estate," "my estate." These terms are repeated frequently,—in more than twenty instances. The language used throughout is not sufficient to justify a construction that the testator was disposing of property not his own. But if the language used is susceptible of two constructions, then we must adopt the one which is in keeping with the general rule of presumption that a testator did not intend to dispose of any property not his own. Sailer v. Furche, supra; Haley v. Gatewood, 74 Tex. 281, 12 S.W. 25; authorities cited above.

If the will should be held to require an election on the part of Mrs. Callie Long, the facts were fully sufficient to show such election by her. But we hold that the language of the will does not meet the requirements to authorize a construction that the testator intended to dispose of the entire community estate, and Mrs. Long was not put to an election. The judgment does not expressly find that the instrument put Mrs. Long to an election, nor is such finding or conclusion involved in the judgment. Appellants' point on election is respectfully overruled.

■ The trial court held that by the last codicil to Dr. Long's will, he passed a fee simple title in all real estate owned by him at his death to his wife, "with no limitation or restraint as to same." With that conclusion we cannot agree. In the original will Dr. Long, we think, gave to his wife a life estate only in his part of the realty, with remainder to his four sons and his granddaughter. This was conceded by appellees' counsel in their original brief

and in oral argument. It is implicit in the trial court's judgment. We may assume that appellees made the concession throughout the trial. In their supplemental brief they again assent to that conclusion, but appear to exclude therefrom the filling station property. We believe it is now too late to admit of such limitation of their position. But even so, the provision which gave authority to Mrs. Long to sell the filling station property "as she may desire and pass good title thereto" is not sufficient language to confer either an absolute or a defeasible fee simple title in Mrs. Long. On the contrary it is in harmony with a life estate. It clearly expresses a willingness to permit the filling station property to be sold, without which a complete title could not pass from a life tenant. If Dr. Long had intended to devise an absolute fee simple title to Mrs. Long, his authority there given to sell would not have been necessary, since alienability is one of the essential incidents of the estate granted. The authorities are settled that an estate in land may be devised for life only, with authority to sell or otherwise dispose of it, with remainder over. Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149, 151, and cases there cited; Medlin v. Medlin, Tex.Civ. App., 203 S.W.2d 635, error refused; Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876; Randall v. Estes, Tex.Civ.App., 218 S.W.2d 338, writ refused; Cottrell v. Moreman, Tex.Civ.App., 136 S.W. 124, error denied; Weir v. Smith, 62 Tex. 1.

■ The first codicil was executed the next day after the original will. It clearly disclosed that Dr. Long's only purpose in its execution was to permit her, with consent of their son Dr. Frankie Long, to sell the "Hospital Building and property located in the City of Sulphur Springs on Atkins Street." The record discloses that this reference is to one piece of property only, generally referred to as the hospital property, including the land and its improvements. Except for this addition, all other portions of the original will remained unchanged. Consent of the son would not have been necessary, and would have been invalid, if she had been devised an absolute fee simple estate. So, the same general

plan of the original will was extended to the first codicil. It follows that a life interest in Mrs. Long as devised in the original will was not affected by the power to sell the hospital property given in the first codicil, nor was there any change in the remaindermen.

It is in the second codicil, executed more than three years later, that appellees insist and the trial court concluded a full and absolute fee simple estate in all lands belonging to Dr. Long was devised to Mrs. Long. The controversy centers primarily around the second paragraph of the second codicil, supra. There the testator refers to the fact that by provisions of the former instruments he had limited the right of his wife to sell any real estate passing to her except the filling station and hospital properties, "and giving her no further right to sell any of the other property." He expressed the "desire to change said features and portions of said paragraph in such respect." While the language used refers to Paragraph 4 of the original will, yet his further language makes it clear that it was his intention to provide a change in both the original will and the first codicil insofar as the right of Mrs. Long to sell his real estate was given or withheld. The second codicil then gave to his wife "the right to sell any and all the real estate which she may own following my death, and which passes to her under my will," with consent of their two sons Dr. Frankie Long and McGee Long. These expressions clearly import that Dr. Long recognized and admitted that by the original will and the first codicil he intended only a life estate in Mrs. Long with power of sale of the two properties mentioned. The next sentence is crucial as the basis of appellees' contention and the trial court's conclusion already stated. It reads: "That is, I now give and devise to my said wife all real estate of whatsoever kind which I may own at the time of my death in fee simple to handle, manage, use and dispose of as she may desire to do, subject only to the condition that she must be joined in the sale of any and all real estate by my said two sons."

If that provision stood alone, uninfluenced by what precedes and follows it in the second codicil, as well as in the original will and the first codicil, it would necessarily follow that an indefeasible fee simple title was passed to Mrs. Long. McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; Norton v. Smith, Tex.Civ.App., 227 S.W. 542, 546, writ dismissed. But when the provision last quoted is read in connection with other provisions, and when all the instruments are construed together in ascertainment of Dr. Long's intention, it seems clear that by the second paragraph of the second codicil he intended no more than to place all of his part of the real estate in the hands of his wife, with power to "handle, manage, use and dispose of as she may desire to do," in the same manner as he had previously provided in respect of the filling station and the hospital properties. The language of the second paragraph of the second codicil is not materially different from that used in the previous instrument, and its effect is nothing more nor less than to add to her life estate previously provided a power of sale of all real estate coming to her under provisions of the entire will.

Appellees urge that in the expression of Dr. Long that his wife "shall have the right to sell any and all of the real estate *which she may own following my death,*" he was making it clear and certain that by "ownership" he meant and intended a fee simple. Ownership has sometimes been so held, but the italicised words quoted are preceded by the expressions above quoted and are followed by the additional expression, "and which passes to her under my will." We cannot isolate the words "which she may own" from that which precedes and follows nor from all other portions of the three instruments. A life estate was that which passed to her, and that is the quality of estate which she owned following his death, and which passed to her under the will.

The conclusion indicated is reinforced by the third paragraph of the second codicil. In the original will Dr. Long provided that none of his property should go in remainder to any child or children of his son Lester by Lester's first wife, should Lester precede his mother in death. The second codicil changed that by the provision that if Lester

should precede his mother in death, his children should receive Lester's share without regard to whether they were children of his first wife. This evidences an intention to leave the provisions of the original will in effect wherein it gave to Mrs. Long a life estate with remainder to Lester and others named by the testator. The fact that Lester did not precede his mother in death does not relieve the provisions of their effect in interpreting the will.

The final statement of the second codicil leaves no doubt in our minds of the correctness of conclusions above expressed: "All the remaining portions of my previous will and codicil not directly changed by this codicil shall remain in full force and effect." This left in full force and effect the provisions (1) That Mrs. Long shall have complete use and possession of all real estate and all income therefrom (Par. 4, original will); (2) at her death all real estate remaining on hand shall descend to and vest in his beloved children together with a child's part to Mary Noel Libbe (Par. 6, original will); (3) the part going to Lester and Mary Noel shall not be paid to them in bulk, but be set up in a trust fund (Par. 7, original will); and this in addition to what we have next above said in reference to the third paragraph of the second codicil.

■ If we are in error in the conclusions stated, it is because we believe the facts are somewhat different from those in the case of McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412. It has long been a rule of law in this state, following the Supreme Court's decision in that case, that even though provisions in a will, if standing alone, would give to a devisee a fee simple estate without limitation or restriction, yet, if by other provisions such devise is qualified or limited so as to provide that if any such property should remain undisposed of by the devisee and be owned by her at her death, such property so remaining would pass to other named persons, then such provisions are enforceable as a conditional limitation or defeasible fee. Lockridge v. McCommon, 90 Tex. 234, 38 S.W. 33; Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876; Adams v. Williams, 112 Tex. 469, 248 S.W. 673; King v. Bock, 80 Tex. 156, 15 S.W. 804; Norton v. Smith, Tex.Civ.App., 227 S.W. 542, writ dism.

■ If, therefore the rule stated in McMurray v. Stanley, supra, and other cases cited, control this case, then the will of Dr. Long, and particularly the second codicil, devised to Mrs. Long a conditional limitation or defeasible fee as to so much of Dr. Long's part of the real estate as remained undisposed of at Mrs. Long's death, and upon her death intestate it passed under the will to the four sons of Dr. and Mrs. Long and to their granddaughter, Mary Noel Libbe, in equal shares. Thus, as to such property, the result is the same.

We therefore hold that the learned trial court erred in holding that the will passed a fee simple estate in Dr. Long's part of the realty to Mrs. Long, "without restraint or limitation."

We now come to the question whether Dr. Long's will created a spendthrift trust in favor of Lester Long. Professor Griswold in his excellent treatise on "Spendthrift Trusts" points out that the validity of the American doctrine of spendthrift trusts has never been squarely determined by our Supreme Court. However, our Commissions of Appeals and Courts of Civil Appeals have long followed such doctrine. 42 Tex.Jur., p. 704. It now appears to have been fully recognized, and we should follow prior decisions of those courts unless and until the Supreme Court holds otherwise.

■ The doctrine arose out of the desire of the donor or testator to secure a trust fund against the improvidence of the cestui que trust by protecting it against his creditors and rendering it inalienable by him before payment. But the courts no longer give emphasis to the improvidence or incapacity of the cestui que trust, and it is generally held that "it is not necessary that the instrument creating the same shall assign any reasons for such provisions, nor is it necessary that the beneficiary shall be in fact improvident, incapable, or a spendthrift." Adams v. Williams, 112 Tex. 469, 248 S.W. 673, 679.

■ However, the courts in this country are in substantial agreement that

immunity of the trust fund from liability for debts of the beneficiary and inalienability by him during its term are necessary incidents of a spendthrift trust. Such incidents are the criteria by which the intention of the donor or testator may be tested. Lindsey v. Rose, Tex.Civ.App., 175 S.W. 829, writ refused; Caples v. Buell, Tex.Com.App., 243 S.W. 1066. In fact, it is restraint on alienation, voluntary or involuntary, that causes an active trust to be of the spendthrift variety. Griswold on Spendthrift Trusts, p. 2; 54 Am.Jur. p. 123, Sec. 149. Ordinarily, "there is a presumption against the creation of a spendthrift trust unless either words to that effect are set forth, or a clear and undoubted intention to the same end is manifested by terms of the instrument." 65 C.J., p. 542, Sec. 290 (6). This, doubtless, is for the reason that in general, restraints against alienation of legal fees are void. Bogert on Trusts and Trustees, Vol. 1A, p. 444, Sec. 220; 32 Tex.Jur. p. 829 et seq. In Texas this applies also to equitable fees. 42 Tex.Jur., p. 703, Secs. 90, 91. Alienability and liability of an estate for the debts of its owner are incidents of ownership. So, a spendthrift trust is, in essence, an exception to the general rule stated. Some early definitions of the term are not accurate in view of more recent decisions, and the term "spendthrift trust" has been criticised as a mis-nomer, and as not being a felicitous one. A recent decision from the Supreme Court of Utah restricts its meaning to its necessary incidents by saying, "In general, a spendthrift trust is one in which the beneficiary is prohibited from anticipating or assigning his interest in or income from the trust estate." Cronquist v. Utah State Agricultural College, 201 P.2d 280, 282. We adopt that definition as applicable to this case, and as being simple, understandable, and coming within the purview of adjudicated cases, particularly in Texas.

 The inquiry, then is not whether the beneficiary was improvident, incapable or a spendthrift; but whether the donor's or testator's intention was to make the trust estate immune from liability for debts of the beneficiary and to prohibit its alienation by him during the term of the trust. Since the testator's intention is to be ascertained from the instrument itself, what are the minimum requirements of language necessary to create such trust? All authorities hold that no particular form of words is required. But the general rule is correctly stated in Griswold's "Spendthrift Trusts," 2nd Ed., pp. 302–304: "Courts have occasionally held that trusts were spendthrift trusts when it was exceedingly difficult if not impossible to find any indication in the terms of the trust that the settlor intended any such limitation on the interest of the beneficiary. These cases deserve no following. *The intention to establish a spendthrift trust ought clearly to appear in the instrument creating the trust,* (emphasis added), for, as more than one court has observed, any other rule 'would be in effect saying that all life estates of like character given in trust, are incapable of being alienated.' There should be 'specific language declaring the trust a spendthrift trust or language from which such an interest might reasonably be inferred.' A mere trusteeship is not enough to make a spendthrift trust."

 Of like effect is the holding in Nunn v. Titche-Goettinger Co., Tex.Com. App., 245 S.W. 421, 422, concerning which the Utah Court in Cronquist v. Utah State Agricultural College, supra, said that "The modern and better view is expressed", when the Commission of Appeals said: "According to the great weight of authority, however, where the instrument creating the trust contains no express words of restraint and nothing in its face declaring that the purpose thereof is to provide a support for the beneficiary and to furnish him with the comforts of life, and where it requires that the revenue arising from such trust shall be paid directly to the beneficiary without any direction concerning its application and without any discretion being vested in the trustee as to the time or amount of such payments or the purpose to which they shall be applied, such revenue may be anticipated, or assigned by the beneficiary or by proper proceedings subjected to the payment of his debts."

 Dr. Long's will does not expressly forbid alienation by Lester Long of

the share provided for him. Appellants' contention can be sustained, if at all, only because such intention must be inferred from the language used. Such inference must arise from a clear import thereof, cannot be presumed, and the testator's words must be susceptible of no other reasonable conclusion. As already shown, Mrs. Long was devised a life estate in the realty. By Par. 6 of the original will, Dr. Long provided that at her death his real estate "shall descend and vest in my beloved children," etc. By force of that provision, upon death of Mrs. Long, and it may be that upon death of Dr. Long, the legal and equitable title to an undivided one-fifth of Dr. Long"s interest in so much of the real estate as had not been disposed of by Mrs. Long passed to and vested in Lester Long, and this carried with it the right of possession by Lester after his mother's death. In any active trust the legal title and right of possession are vested in the trustee, and the beneficiary has the equitable title only, without possession or right of possession. A spendthrift trust must be based on an active trust. If it is merely passive or inactive, there can be no spendthrift trust. 69 C.J., p. 701, Sec. 1826(b); 42 Tex.Jur., p. 706, Sec. 92; 54 Am.Jur., p. 32, Sec. 14.

But appellants urge that the provisions of Par. 6, supra, were qualified by Par. 7 of the original will. The applicable portions of Par. 7 read: "It is my desire and direction that such interest, share and amount of my estate as may go to my granddaughter, Mary Noel Libbe, and my son Lester Long, be not given to them in bulk but be held in trust for their benefit and paid to them in monthly payments. * * * I direct that their such portions shall be deposited or turned over to the City National Bank of Sulphur Springs, Texas, * * * and be held by it as a trust fund for said two parties, and Mary Noel Libbe be paid the sum of $40.00 per month and said Lester Long the sum of $50.00 per month." These provisions clearly contemplate that at Mrs. Long's death the realty remaining as Dr. Long's part of his estate,—and realty was all that did remain,— should be sold; that "the interest, share and amount" as may go to Mary Noel Libbe and

Lester Long "be deposited or turned over" to the bank "and be held by it as a trust fund," and paid them in monthly payments of $40 and $50, respectively. These provisions relate to the corpus of the fund to be handled by the bank. There is no mention of the income in this connection, and the trial court's judgment involves a finding, if necessary, that the evidence was insufficient to show that the income would be adequate to meet the payments. There is no authority given the bank to sell the realty, without which it could not make sale or conveyance, since the authority of a trustee of a testamentary trust is limited to the will creating the trust. Williams v. Smith, Tex. Civ.App., 200 S.W.2d 201; Id., 146 Tex. 269, 206 S.W.2d 208, 215; Hays v. Harter, Tex.Civ.App., 177 S.W.2d 797, error refused; Haldeman v. Openheimer, 103 Tex. 275, 126 S.W. 566. Without sale of the realty the testator's expressed desires and intentions in this particular could not be carried out. We must discover, if we can, the general scheme of the will, and carry out the dominant or general intent of the testator, as far as possible, unless such scheme contravenes an established rule of law or public policy. 44 Tex.Jur., pp. 691–694, Sec. 137. "When a dominant or general intent is disclosed by the entire will, and a particular or special intent is shown by a clause or provision of the instrument, both will be carried out, if possible. But the general intent will control, at least when it is clearly expressed, in case of conflict with a particular intent, if the two cannot be reconciled. In other words, the general intent appearing from the provisions of the will as a whole must prevail, and any particular clause or provision which, taken alone, would indicate a contrary intention, will yield thereto." 44 Tex.Jur., pp. 694–695, Sec. 138, and cases cited. If two possible constructions present themselves, the one which results in carrying out the dominant scheme of the will should prevail. Construction of a provision which defeats the general scheme of the will is to be avoided. Sims v. McMullan, Tex.Civ.App., 22 S.W.2d 313, reversed by Supreme Court on other grounds, McMullen v. Sims, Tex. Com.App., 37 S.W.2d 141; Vogt v. Meyer,

**248**

Tex.Civ.App., 169 S.W.2d 745; Hunt v. Carroll, Tex.Civ.App., 157 S.W.2d 429, error dismissed.

We think the general scheme of Dr. Long's will clearly expressed the intent to leave a life estate in his real estate to Mrs. Long, with power of sale, and that any real estate remaining undisposed of at her death should go in five equal parts, one part in fee simple to each of "my beloved children" and one part in fee simple to Mary Noel Libbe. The provisions that the shares going to Lester and to Mary Noel shall not be paid to them in bulk but turned over or deposited as a trust fund in the bank and paid to them in monthly amounts have to do with the manner of distribution to them. No method of distribution is provided as to the remaining parts. Since partition and division of the estate are not restrained in the will, and since Dr. Long clearly contemplated that Mrs. Long might die intestate, we think it is also clear that he contemplated a distribution of both estates through liquidation. To construe the will as setting up a spendthrift trust in behalf of Lester and Mary Noel Libbe would defeat the general scheme of the will, namely, to give to each of them and his other beloved children a fee simple estate in all of his realty remaining after Mrs. Long's death. It would, in effect, amount to a restriction on sale of interests of other devisees, since no complete title could be passed by them. It would also defeat the intention of Dr. Long, clearly expressed, that Lester and Mary Noel Libbe be paid off in monthly payments, because there could be no fund created with which to pay $40 and $50 per month without selling the real estate. The trust fund, so-called, was in fact so created, by sale of Lester's and Mary Noel's interest in real estate through their attorney in fact, duly appointed by them for that purpose. No complaint is here made, nor in the trial court, that that was done. What they could do through a power of attorney they could do themselves.

It is thus seen that title to Lester's and Mary Noel's portions vested in them in fee simple, with right of immediate possession. As already stated, to create an active trust in land, whether spendthrift or ordinary trust, the legal title and right of possession must be vested in the trustee. There is not an expression in this will to effect that result. The evidence shows that the bank never took possession of any real estate, and had nothing to do with any sale, rentals, or other handling of it.

It is shown that the first distribution was made September 24, 1945, about 2½ months after Mrs. Long's death. At that time $2,000 from his father's estate was deposited in the City National Bank, not to the bank nor to any official of the bank, as trustee, but to the account of "Lester Long, subject to his check $50.00 a month." Additional amounts were deposited to that account from sales of real estate, rentals, etc., from time to time. It must therefore have been necessary for Lester to draw his own check for monthly payments. The president of the bank testified that the bank never took title to this fund, nor to any other property devised to Lester. The relation between the bank and Lester was in the ordinary form of debtor and creditor, with a limitation on the drawing account. The fund in the bank was not a trust fund merely because it was so called. The restriction on the amount to be drawn by Lester was carried out until he assigned and transferred his interest therein to McGee Long, after which such restricted amount was paid to Lester's transferee until the suit was filed.

"A trust involves a duty to deal as fiduciary with some specific property for the benefit of another. A debt involves a merely personal obligation to make payment of a sum of money to another." 1 Scott on Trusts, p. 86, Sec. 12.1. It must be presumed that Dr. Long knew and intended that the money directed by him to be turned over to or deposited in the City National Bank would be handled in the usual and customary manner as a deposit. In such case the bank mingles the money with its own and uses it for its own benefit, becoming indebted to the depositor. There is nothing in the will to indicate that he intended the money turned over to the bank as Lester's part should be segregated from other monies in the bank. Dr. Long himself, at the time of his death, was a deposi-

tor in this bank to the extent of more than nine thousand dollars. When he directed that Lester's part "be deposited or turned over" to the bank, he must have had in mind the same kind of transaction as when he had deposited or turned over his money to the bank. His direction that Mary Noel Libbe "be paid the sum of $40.00 per month, and said Lester the sum of $50.00 per month,'" has not the slightest implication that said sums were to be withdrawn from the exact monies deposited. On the contrary, the language is clear, that said sums were to be paid out of general funds of the bank and charged to the account. See 1 Scott on Trusts, pp. 82–94, Secs. 12, 12.1 and 12.2 for fuller discussion of the principles involved.

The provision that Lester should not be paid his part in bulk has nothing to do with the vested title. As already stated, it related to distribution only. He could not be the owner of the fee to realty and at the same time restricted in his alienation of it. Being holder of the fee simple title, such restriction would be void. Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149; Bogert on Trusts and Trustees, Vol. 1A, p. 444, Sec. 220; Diamond v. Rotan, 58 Tex.Civ.App. 263, 124 S.W. 196, writ refused. His part from sales of realty was as fully and completely his as was the title to the realty. To hold that the provisions of the will under consideration created a spendthrift trust by implication, there being no such express provision, we would have to read into the will that Lester Long shall have no legal title, only a life interest, that legal title is in the bank, equitable title only to the extent of $50.00 per month is in Lester, that his interest shall not be alienable by him, and shall not be subject to his debts.

 We recognize the rule that it is not necessary that the trust instrument expressly convey or devise legal title to a trustee, if the intention to create an active trust appears from the instrument. Dulin v. Moore, 96 Tex. 135, 70 S.W. 742; Patten v. Herring, 9 Tex.Civ.App. 640, 29 S.W. 388, error refused; Adams v. Williams, supra. But again, such intention must be "as clearly manifested as if express terms had been employed." Dulin v. Moore, supra [96 Tex. 135, 70 S.W. 743]. This will does not meet the requirements in this respect. But if we should hold that Lester Long had only an equitable title, there are no express words forbidding his alienation of it, nor is an intention to restrain his alienation as clearly manifested as if express words had been employed.

If Dr. Long had intended to create a spendthrift trust, appropriate language was available to him or his attorney who drew the will to do so. It requires very simple language and few words to add a retraint on alienation or that the legacy shall not be subject to the debts of the beneficiary. On three different occasions the testator imposed restraints on alienation of realty by his wife. He made his intentions abundantly clear in those instances. But not once did he restrict Lester's right to convey. On the contrary, his desires could not be carried out without liquidation. Sales, of course, had to be made by those vested with the legal and equitable titles. As already pointed out, a restraint on sale of Lester's part would in effect have been a restraint on sale of the other parts, since a complete title could not have passed. We are therefore constrained to hold that the will of Dr. Long did not create a spendthrift trust in favor of Lester Long, that his conveyance and assignment of his entire interest in the estate was valid, and that the trial court did not err in so holding.

This conclusion is valid whether the entire will is held to have devised a life estate to Mrs. Long with remainder over as to property not disposed of by her, or a fee simple title defeasible at her death as to such property as remained. In view of this disposition of the question, the error of the trial court mentioned in a previous section of this opinion becomes immaterial.

 Appellants further urge that the appellee McGee Long was estopped from contending that the will of Dr. Long did not set up a spendthrift trust in favor of Lester Long, and that the trial court erred in not so holding. Appellants pleaded that McGee Long handled the estates of his father and mother, and that after the death of his mother, he set up a fund in the City Nation-

al Bank, as trustee; that periodic payments were made to Lester as provided in the will; that McGee Long by his acts placed a construction on the will as creating a spendthrift trust, and at all times recognized that such trust was so created.

The evidence shows, as already stated, that a fund was set up in the bank to the credit of Lester and of Mary Noel Libbe, and that periodic payments were made to them by the bank, on checks drawn by them, in the amounts named in the will. At the time of trial the fund in the Lester Long account was $3,950. On the date of the sale by Lester to his brother McGee, Lester was indebted to the bank in the sum of $2,692, on a loan made by the bank on security of Lester's interest in the estate and in the fund. McGee paid that debt as part of the consideration for his purchase from Lester, but it seems that the amount of the claimed trust fund was kept intact, probably contingent on the outcome of this litigation.

As further evidence in support of the plea of estoppel, appellants introduced the following letter written by McGee Long to Lester Long, date not appearing: "You are exactly right in your opinion of the will. You see mama would not make a will and, too never would or did ratify the one papa left, so legally this is true. The four of us divide the one-half of our mother's interest and the five of us the other half. This will put all of Mary's part in trust fund to be paid monthly at $40.00 per month. Your interest in the mother part will come cash and the part of papa's in a like manner at $50.00 per month. City National bank here is trustee. On rentals of the property that we do not sell at this time will have to be divided thus."

As part of the total transaction of sale, Lester Long executed and delivered to McGee Long an assignment of all his "right, title, equity and interest in and to that certain Trust Fund in the name of Lester Long at the City National Bank at Sulphur Springs, Texas, which said trust fund arises by virtue of funds paid, and to be hereafter paid to me from the estate of my father, Dr. W. W. Long, as provided in his will * * *."

If the foregoing evidence should be held to establish that a trust was provided for, it was no more than a simple, passive trust. None of the acts, conduct or declarations of McGee Long evidence any construction by him that it was a spendthrift trust. Even if it did so, such construction would not be binding on the courts. Richardson v. McCloskey, Tex.Civ.App., 261 S.W. 801, reversed by Commission of Appeals on other grounds, 276 S.W. 680. The general rule seems to be that it is only when an ambiguity is found that the construction placed on the will by the parties may be a circumstance in favor of a similar construction by the courts, but is not conclusive. Campbell v. Fowler, 226 Ky. 548, 11 S.W.2d 423. Appellants do not assert that there is ambiguity in the provisions under review, and appellees expressly assert there is none.

■■■ "The basis of estoppel is deception. There can be no estoppel in pais in the absence of deception." Shear Co. v. Wilson, Tex.Com.App., 294 S.W. 843. Further elements of estoppel are quite generally known, and they are well stated, with numerous citations, in 17 Tex.Jur., p. 127 et seq., and in 31 C.J.S., Estoppel, § 59, pages 236 et seq.

The evidence does not show that any conduct, acts, or representations of McGee Long influenced either appellants or Lester Long to change their positions for the worse; that they were in any manner misled by McGee Long; that any right was acquired by them as a result of any such conduct or representations of McGee Long; or that appellee was guilty of fraud or deception of any kind. No issue is made, and not the slightest suggestion, that the consideration was inadequate, nor that Lester was over-reached in any way. We must therefore conclude that the trial court did not err in holding that estoppel was not shown. What we have said disposes of this appeal, and other points presented become immaterial and are overruled.

It is therefore ordered that the judgment of the district court be and it is hereby affirmed, and appellants' motion for rehearing is overruled.