Tims v. Tims 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-227-CV





MARY KAREN TIMS,



 APPELLANT


vs.





BILLY R. TIMS,



 APPELLEE


 






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT



NO. FA90-0512-C, HONORABLE DICK ALCALA, JUDGE PRESIDING



 





PER CURIAM



 Appellant Mary Karen Tims appeals the trial court's order clarifying and enforcing
a divorce decree. Tex. Fam. Code Ann. §§ 3.70-.77 (West 1993). (1) The decree, rendered
December 7, 1990, divorced Mary from appellee Billy R. Tims and divided Mary's and Billy's
property. Because the trial court had not filed properly requested findings of fact and conclusions
of law, as Mary argued in point of error one, we abated the appeal, ordering the trial court to file
findings and conclusions. See Tims v. Tims, No. 3-92-227-CV (Tex. App.--Austin March 3, 1993)
(not designated for publication). The findings and conclusions are now filed. We proceed to
consider points of error two through five.

 In points of error two and three, Mary complains that the trial court's order
enforcing and clarifying the divorce decree retroactively changed provisions in the decree. Mary
focuses on the decree's provisions appointing a trustee and directing the sale of the parties' house. 
In the divorce decree, the trial court ordered the parties' house to be sold under certain conditions: 
 (1) the parties were to list the house with a broker; (2) the house was to be sold at a reasonable
and fair market price; (3) if the broker did not sell the house within six months from the date of
the decree, W. Hampton Beesley was appointed "trustee to take over and sell the property and
collect the funds"; and (4) the net sales proceeds, less reimbursements to Mary, were to be split
between Mary and Billy.

 The parties agree that Billy submitted an offer to buy the house on December 4,
1990, just days before the court rendered its divorce decree. Beesley testified that, in late July
or early August 1991, the listing realtor presented Billy's contract to Beesley and that he accepted
the offer in early August. Mary testified that when she learned that Beesley had accepted Billy's
offer and executed a sales contract, she submitted her own offer to Beesley. Having executed one
contract for the house, however, Beesley stated that he could not legally sign a second. 

 Billy then petitioned the trial court to clarify the divorce decree to specify whether
Beesley was authorized to execute the instruments of conveyance as trustee; Billy also asked the
court to direct Mary to execute instruments of conveyance and the documents required to effect
the sale. The trial court rendered an enforcement order by which it ordered Beesley "as
Trustee/Receiver to execute any and all instruments necessary to effect such conveyance"; the
court also ordered Mary to convey her interest in the house on the terms of the executed contract. 

 Mary asserts that the enforcement order retroactively appointed a receiver,
specified the trustee/receiver's duties, and enforced the trustee/receiver's prior actions. To have
retroactive effect, the enforcement order would have to create a receivership and specify duties
that the divorce decree did not authorize. A trial court cannot change the terms of a final divorce
decree, but it can make orders to implement the decree in a manner consistent with its provisions. 
§ 3.71; Schwartz v. Jefferson, 520 S.W.2d 881, 889 (Tex. 1975); McEntire v. McEntire, 706
S.W.2d 347, 350-51 (Tex. App.--San Antonio 1986, writ dism'd). The question then is whether
the enforcement order goes beyond clarifying and implementing the divorce decree to
substantively modify it. 

 The original decree states that if the realtor does not sell the house within six
months, "the Court appoints W. Hampton Beesley as Trustee to take over and sell the property." 
The enforcement order states that "the court orders W. Hampton Beesley, as Trustee/Receiver to
execute any and all instruments necessary to effect" the sale of the house to Billy. While the
original decree appoints and orders Beesley to act as trustee, the enforcement order commands
Beesley to act as trustee/receiver. The enforcement order does not omit the label "trustee," but
joins it with "receiver" by a slash, indicating that either label independently or both together
apply.

 A "trustee" is a person given a duty to deal as fiduciary with specific property for
the benefit of another. Long v. Long, 252 S.W.2d 235, 248 (Tex. Civ. App.--Texarkana 1952,
writ ref'd n.r.e.). A "receiver" is a trustee or ministerial officer of the court, representing the
court, all parties in interest in the litigation, and the property entrusted to him. Mid-Continent
Supply Co. v. Conway, 240 S.W.2d 796, 803 (Tex. Civ. App.--Texarkana 1951, writ ref'd n.r.e.);
see Black's Law Dictionary 1268 (6th ed. 1990). By definition, then, a receiver can be a trustee
for certain purposes.

 The order and decree show that, more than his title, Beesley's duties define his
role. The enforcement order modifies Beesley's title, but his duties under both the decree and the
order are narrowly drawn: the decree confines Beesley's authority to taking over and selling the
house, the enforcement order to executing the documents necessary to sell the house to Billy. 
Beesley's office under these orders is tied to the specific duties the court assigns him rather than
to his title. See Cline v. Cline, 323 S.W.2d 276, 280-81 (Tex. Civ. App. 1959, writ ref'd n.r.e.)
(court appointed a "commissioner" to sell property in a community estate). Comparing the duties
assigned Beesley in the decree and in the subsequent order, we determine that the change in titles
is not a substantive modification of the decree. 

 Further, the trial court's enforcement order neither modified Beesley's duties nor
approved actions Beesley could not have taken under the divorce decree. In its decree, the trial
court ordered Beesley to sell the parties' property. An offer was presented to Beesley according
to the terms of the decree, and Beesley accepted it. Because Mary apparently would not acquiesce
in the sale, the trial court specified more precisely the manner of implementing the property
division it had previously made. § 3.71; e.g., Reiter v. Reiter, 788 S.W.2d 201, 204 (Tex.
App.--Fort Worth 1990, writ denied). Beesley's power to execute the instruments of conveyance
existed under both the divorce decree and the enforcement order. Invalidity of the contract
between Beesley and Billy cannot be grounded on Beesley's lack of authority under the decree to
execute it. Because the division of property in the decree remained the same in the order and the
order was consistent with the decree, we overrule points two and three.

 In point of error five, Mary asserts that the trial court erred in concluding that
Beesley, as the trustee appointed in the decree, was authorized to sell the house and to execute any
document necessary to complete the sale, including the contract signed by Billy. Mary argues that
the findings the court made are not complete enough to support its conclusion and that she had no
chance to request additional findings. 

 Mary contends that the trial court filed its findings too late for her to request
additional findings. See Tex. R. Civ. P. 298. She argues that the additional findings should have
included the dates Billy and Beesley signed the contract, the value of the house, and the
reasonableness of the contract.

 The trial court is required to find only the ultimate, controlling issues of fact raised
by the parties' pleadings. Guaranty Bond State Bank v. Tucker, 462 S.W.2d 398, 404-05 (Tex.
Civ. App.--Dallas 1970, writ ref'd n.r.e.). A court correctly overrules a request for additional
findings that are evidentiary or that were disposed of directly or indirectly by its original findings. 
Williams v. State, 283 S.W.2d 444, 447 (Tex. Civ. App.--Waco 1955, writ ref'd); Anderson v.
Smith, 635 S.W.2d 204, 207 (Tex. App.--Houston [1st Dist.] 1982, no writ); Guaranty Bond State
Bank, 462 S.W.2d at 404-05; see Tex. R. Civ. P. 299.

 Assuming that the court improperly prevented Mary from requesting the additional
findings she specifies, the error is not reversible unless it probably caused the rendition of an
improper judgment or prevented Mary from properly presenting her case on appeal. Tex. R.
App. P. 81(b); Anderson, 635 S.W.2d at 206-07; see Wagner v. Riske, 178 S.W.2d 117, 120
(Tex. 1944) (court's failure to file additional findings not reversible if record affirmatively shows
appellant suffered no injury). Once the trial court has filed findings and conclusions that confine
its judgment to a single theory, an appellant's inability to obtain additional findings is not
necessarily assessed for harm as strictly as her inability to obtain original findings. Anderson, 635
S.W.2d at 207.

 The controlling issue before the trial court was whether the sales contract between
Billy and Beesley was validly executed under the divorce decree. The findings and conclusions
that the court filed focus on the status of this contract as the basis of its judgment. The trial
court's separately filed findings concern aspects of the contract's conformity to the decree, but do
not expressly state that the contract was valid. However, the court recites in the judgment that
it finds the sales contract to be binding. Whether we consider the factual recital in the judgment
depends on the import of Rule of Civil Procedure 299a. Tex. R. Civ. P. 299a.

 Rule 299a states that the trial court's findings shall be filed separately from the
judgment and not recited within it. It also states that if a conflict exists between findings recited
in a judgment and findings filed separately, the separate findings control. Id. Rule 299a thus
foresees that despite the rule, trial courts might still recite findings in their judgments. Rather
than forbidding appellate courts to consider these recitals, Rule 299a provides the procedure for
considering both recitals and separate findings and for resolving a conflict between them. Because
considering the finding in the judgment does not violate Rule 299a and because that finding does
not conflict with any separately filed finding, we consider both.

 The finding that the contract between Billy and Beesley was a binding contract
resolves the controlling issue in dispute. It implies the related facts that the contract was
reasonable and that Billy offered a fair market price for the house. Tex. R. Civ. P. 299. The
specific value of the house was merely an evidentiary fact that the trial court was not required to
find. Guaranty Bond State Bank, 462 S.W.2d at 404-05.

 The trial court expressly found that Beesley entered into the contract with Billy
more than six months from the date of the divorce decree. For the contract to be valid, Beesley
had to execute it after he was authorized to act as trustee. His authority began six months after
the date of the divorce decree. The finding the court made rendered a finding on the specific date
Beesley signed the contract unnecessary. Because no contract existed until Beesley accepted
Billy's offer, the date Billy signed the contract is immaterial. The issues on which Mary desires
additional fact findings would not have caused the rendition of a different judgment and did not
prevent her from properly presenting her case on appeal. Tex. R. App. P. 81(b).

 Mary also argues that other fact findings were necessary to support the trial court's
conclusion. The findings she elaborates are evidentiary only, and the trial court was not required
to make them. Together, the trial court's express and implied findings adequately support its
conclusion that Beesley was authorized to execute the documents required to sell the house to
Billy. We therefore overrule point five.

 In point of error four, Mary claims that the trial court erred in enforcing a void
contract to sell the house. She first argues that the contract is void because Billy signed it on
December 4, 1990, before the date of the divorce decree. No contract to sell the house existed
until Beesley accepted Billy's offer. Beesley testified that he signed the contract in early August
1991, and the trial court found that Beesley signed the contract more than six months after the date
of the divorce decree. Mary does not contest this fact finding. Because the contract came into
existence at a time authorized by the court's decree, the date on which Billy signed the contract
is immaterial. 

 Mary also argues that by failing to independently establish the value of the house
and to solicit her bid on it, Beesley did not reasonably fulfill his fiduciary duties. The terms of
the divorce decree impose no duty on Beesley to approach each party for bids. While not granting
either party a first option to buy the house, the decree also did not prohibit either one from
initiating his or her own bid. Mary's claim that she was not notified of Billy's offer has no merit
under the terms of the decree.

 Mary claims that Beesley did not properly establish the value of the house because
he did not ask her opinion of its value or seek an independent appraisal. Beesley testified that in
determining a reasonable value for the house he referred to an appraisal done in 1990. After he
received Billy's offer, Beesley discussed the amount of the offer and the condition of the property
with the man who performed the appraisal; he also discussed these things with the realtor. From
his consultations, Beesley determined that Billy's offer represented a reasonable value for the
house. Because Beesley properly carried out his duties as trustee under the divorce decree, we
overrule point four.

 We affirm the judgment of the trial court.


[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: August 25, 1993

[Do Not Publish]

1. [1]  All statutory references denote Tex. Fam. Code Ann. (West 1993).