

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

October 2, 1986

Mr. John S. Cargile
Chairman
Board of Regents
Texas State University System
505 Sam Houston Building
Austin, Texas 78701

Opinion No. JM-551

Re: Whether Southwest Texas State University may expend appropriated funds on behalf of real property donated in trust, and related questions

Dear Mr. Cargile:

You ask several questions concerning the Harold M. Freeman Educational Foundation which was created to make use of certain ranch property available to Southwest Texas State University by the medium of a testamentary trust. The property is not devised to the state or to the university or to a nonprofit corporation that supports the educational purposes of the university. Frost National Bank of San Antonio is an "Inactive Co-Trustee" and Southwest Texas State University is an "Operating Co-Trustee." Subject to the conditions of the trust, the ranch property is to be used and operated solely for farm, ranch, and game management, educational, and experimental purposes in connection with the educational activities carried on by Southwest Texas State University for the benefit of its students and the public. The trust did not receive funds with which to operate the trust property except for funds that may be generated by its own operation.

The trust is the real owner of the property. The trustees have a legal title, coupled with a power that may be exercised subject to the conditions of the trust. See Parrish v. Looney, 194 S.W.2d 419, 423 (Tex. Civ. App. -- 1946, no writ). The trust in question contains several restrictions and conditions. As Operating Co-Trustee, Southwest Texas State University is directed to operate the trust property as a self-supporting entity fiscally separate from the university. All income earned by the trust shall be retained for the maintenance, operation, and improvement of the trust property and expenses of administering the trust. The university is directed to pay ad valorem taxes and insurance premiums for liability and fire and extended coverage insurance from the funds of the trust. Neither the income nor corpus of the trust may be used for or distributed to any individual or institution, including the trustees. The trustees may not mortgage, encumber, lease, sell, or exchange any of the trust's real property. On the resignation or removal of the Operating Co-Trustee for failure to operate the trust for the specified purposes and

according to the terms and conditions of the trust, the Inactive Co-Trustee is directed to replace the Operating Co-Trustee with another qualifying organization or to transfer the property of the trust to the Emma Freeman Foundation or to terminate the trust and distribute the proceeds of the sale of its assets to former beneficiaries of the Emma Freeman Foundation.

You ask whether Southwest Texas State University may spend state funds appropriated to it to erect permanent improvements on the trust's real property or to pay operational expenses of the trust and purchase equipment and livestock necessary to operate the trust. We assume that your inquiry relates to authority granted by the Texas Constitution, by the Texas statutes, and by the testamentary trust.

Part of your inquiry is whether the expenditure of appropriated funds to permanently improve the trust real property or to operate the trust would violate the prohibitions of article III, section 51, and article XVI, section 6, of the Texas Constitution. Article III, section 51, provides, in part, that

> [t]he Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever. . . .

Article XVI, section 6, provides, in part, that

> [n]o appropriation for private or individual purposes shall be made, unless authorized by this Constitution. . . .

Both the courts and this office have approved statutes and appropriations that authorize grants of public funds to private entities so long as the expenditure is made for the direct accomplishment of a legitimate public purpose. See Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960). See also State v. City of Austin, 331 S.W.2d 737 (Tex. 1960); Davis v. City of Lubbock, 326 S.W.2d 699 (Tex. 1959); Attorney General Opinions MW-89 (1979); H-1260 (1978). Also, the public entity must receive adequate consideration to avoid making a gift or grant of public funds to a private entity in violation of article III, section 51. See Attorney General Opinions H-1309 (1978); H-403 (1974). When the state seeks to accomplish a public purpose by granting funds to a private entity, it must maintain adequate control over the use of the funds to see that the public purpose is achieved. See Attorney General Opinions MW-423 (1982); MW-373 (1981).

No fixed rule delineates exactly what constitutes a public purpose. Public education is, however, an essential governmental function. Rainey v. Malone, 141 S.W.2d 713 (Tex. Civ. App. - Austin 1940, no writ); Attorney General Opinion M-1221 (1972). It is our

opinion that an entity and a program that contributes to the promotion of education serves a public and governmental purpose.  See Attorney General Opinions MW-373 (1981); M-391 (1969).

Southwest Texas State University is under the management and control of the Board of Regents, Texas State University System.  Educ. Code §§95.01, 96.41.  The board is responsible for the general control and management of the universities in the system and, among other things, may perform such acts, as in the judgment of the board, contribute to the development of the universities in the system and the welfare of their students.  Educ. Code §95.21(a).  All appropriations made by the legislature for the support and maintenance of the system universities, for the purchase of land or buildings for the universities, for the erection or repair of buildings, for the purchase of apparatus, libraries, or equipment of any kind, or for any other improvement of any kind shall be disbursed under the direction and authority of the board.  Educ. Code §95.28.  The board may accept donations, gifts, grants, and endowments for the universities under its control to be held in trust and administered by the board for the purposes and under the directions, limitations, and provisions declared in writing in the donation, gift, grant, or endowment, not inconsistent with the laws of the state or with the objectives and proper management of the universities.  Educ. Code §95.34.  In our opinion, the legislature, in delegating such duties to the board, authorized the board to determine whether any particular expenditure constitutes a valid public purpose.  The determination is to be made initially by the Board of Regents and, if challenged, ultimately by a court.  See Attorney General Opinions MW-373 (1981); H-1312 (1978).

It is our opinion that funds appropriated and allocated for use by Southwest Texas State University for permanent improvements may be used, as provided by article VII, section 17, of the Texas Constitution and by chapter 62 of the Education Code, on the trust real property without violating article III, section 51, or article XVI, section 6.  The mere fact that improvements are located on land that is not owned by the state, or the fact that the interest in land is subject to reverter or termination, does not render expenditures, ipso facto, violative of the constitution.  In Attorney General Opinion H-403 (1974), this office determined that the question of constitutionality depends on whether the expenditure for a livestock export station on leased land was a proper public purpose and in exchange for adequate public benefits.  See also Attorney General Opinion H-416 (1974) (Texas Aeronautics Commission may make a grant of state funds for improvements on municipal airfield on leased land if grant is for a proper public purpose and an adequate consideration).  In Attorney General Opinion H-655 (1975), this office stated that it was aware of no constitutional inhibitions to the construction of permanent improvements by a state university on land subject to a possibility of reverter and that, as with improvements on leased land, article III, section 51, and its associated provisions would not be violated if the expenditure is for a proper public purpose and adequate consideration.

See also, Attorney General Opinions H-257 (1974) (Parks and Wildlife Department could spend state funds to construct facilities on land owned by the federal government without violating article III, section 51 because expenditure had valid public purpose and adequate public benefit); MW-514 (1982) (Texas Tech University Health Sciences Center may construct medical school facilities on land subject to rights of reversion without violating article III, section 51). Cf. Attorney General Opinion C-395 (1965) (prohibition in article VII, section 17 against use of general revenue fund for permanent improvements by designated universities did not apply to construction of building on state-owned land for museum that is a separate entity but administered by a university).

The authority of the university to spend state funds to improve or operate the trust property is determined not only by the Texas Constitution and statutes but also is determined by the terms and conditions of the trust. The trustee of a testamentary trust can exercise only such authority as is vested in him by the will under which he acts. Williams v. Smith, 200 S.W.2d 201, 207 (Tex. Civ. App. - Galveston 1947), rev'd. on other grounds 206 S.W.2d 208. As we previously mentioned, article 95.34 of the Education Code authorizes the Board of Regents to accept donations, gifts, grants, and endowments for the universities under its control to be administered for the purposes and under the directions, limitations, and provisions declared in writing in the donation, gift, grant, or endowment.

The will that creates the trust in question directs the university, as the Operating Co-Trustee, to manage and operate the day-to-day and long-term operations of the trust property as a self-supporting entity fiscally separate from the operation of Southwest Texas State University. It appears that the terms of the will preclude the university's use of its own funds for the improvement or operation of the trust property as a laboratory in support of its agricultural and range management educational programs. See Attorney General Opinion MW-425 (1982) (funds donated to Pan American University may be used only for purposes authorized by the donor pursuant to section 112.34 of the Education Code). However, to carry out the purposes of a trust, a court may direct or permit the trustee to do acts that are not authorized or that are forbidden by the terms of the trust if, because of circumstances not known or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust. See Property Code §112.054; Smith v. Drake, 94 S.W.2d 236, 238 (Tex. Civ. App. - Austin 1936, no writ).

In addition to the provision of the will specifying that the trust and trust property be operated as a self-supporting entity fiscally separate from the university, the will also provides that the university, as the Operating Co-Trustee, shall, from the trust fund, discharge all obligations of the trust, including without limitation, property costs such as ad valorem taxes and insurance premiums for

general liability and fire and extended coverage insurance on the improvements. Hence, it appears that the terms of the trust also preclude the university's use of appropriated funds to purchase insurance. You inquire, however, whether the university may spend appropriated funds to purchase fire and extended coverage insurance as required by the will.

It is the policy of this state that the state shall carry its own insurance on state buildings and contents and that no insurance policies be purchased on any of the public buildings of this state or their contents. See Senate Concurrent Resolution No. 3, Acts 1921, 37th Leg., 2nd C.S., at 369. In view of the legislative intent expressed in that resolution, this office in Attorney General Opinion M-1257 (1972) determined that Tyler State College could not purchase fire and extended coverage insurance on college buildings or their contents. See also Attorney General Opinions C-193 (1963); O-6246 (1944). The state has continued to self-insure its own property for fire and extended coverage insurance and makes special appropriations to repair and replace facilities and equipment destroyed or damaged by such events as fire, flood, windstorm, and hurricane. For instance, chapter 21, appropriates funds to Southwest Texas State University to repair or replace property damaged or destroyed by a flood on June 20, 1981. Acts 1981, 67th Leg., 1st C.S., ch. 21, at 239. See also Acts 1981, 67th Leg., chs. 628, 585, 83 (appropriations to Pan American University for damage caused by hurricane, to North Texas State University for wind damage, and to Texas Forest Service of Texas A & M University System for windstorm damage); Acts 1979, 66th Leg., ch. 20, at 30 (appropriation to Sam Houston State University for damage caused by fire).

The governing bodies of state universities are creatures of statute and may exercise only powers delegated to them by the legislature. See Attorney General Opinion MW-475 (1982). The legislature has not authorized Southwest Texas State University to purchase fire and extended coverage insurance for the university's property. We are not aware of a statute that authorizes the university to purchase insurance on property belonging to a trust that the university operates in connection with its educational activities.

You also inquire whether article V, section 56, of the 1985 General Appropriations Act or any other state law prevents the university from spending appropriated funds to purchase liability insurance covering tort claims that may arise from its operation of the trust property.

The Texas Tort Claims Act generally authorizes a governmental unit to purchase liability insurance to cover its operations. The provision in section 9 of article 6252-19, V.T.C.S., now codified as section 101.027(a) of the Civil Practice & Remedies Code, provides that

> [e]ach governmental unit may purchase insurance
> policies protecting the unit and the unit's
> employees against claims under this chapter [Texas
> Tort Claims Act].

However, the legislature consistently has provided that none of the funds appropriated in the biennial General Appropriations Act may be expended for the purpose of purchasing policies of insurance covering claims arising under the Texas Tort Claims Act. See Acts 1985, 69th Leg., art. V, ch. 980, §56; Attorney General Opinion H-900 (1976). The restriction in article V, section 56, of the Appropriations Act applies only to claims under the Tort Claims Act and does not apply to liability insurance purchased under article 6252-19a, V.T.C.S. Article 6252-19a provides that

> [t]he State Departments or Agencies who own and
> operate motor vehicles, aircraft and motorboats or
> watercraft of all types and sizes shall have the
> authority to insure their officers and employees
> from liability arising out of the use, operation
> and maintenance of such automobiles, trucks,
> tractors, power equipment, aircraft and motorboats
> or watercraft used or which may be used in the
> operation of such Department or Agency.

There is a distinction between appropriations for claims arising under the Torts Claims Act and those arising under article 6252-19a and the common law. See Attorney General Opinion H-158 (1973). See also Attorney General Opinions M-1257 (1972) (college may pay premiums on liability insurance on college owned vehicles under article 6252-19a); M-1215 (1972) (Parks and Wildlife Department may purchase liability insurance under article 6252-19a since prohibition against use of appropriated funds applied only to insurance coverage purchased under Torts Claims Act); M-521 (1969) (Appropriations Act prohibited purchase of insurance covering liability under Torts Claims Act); M-559 (1970) (Highway Department may purchase liability insurance as provided by article 6252-19a).

However, article 6252-19a permits only the purchase of insurance to cover liability incurred by the operation of a state-owned vehicle. See Attorney General Opinion M-559 (1970). It is our opinion that neither article 6252-19a nor any other statute authorizes the expenditure of appropriated funds to purchase liability insurance covering tort claims that may arise from the operation of the trust property. Since there is no statutory authority for the payment of such premiums by a state university, liability insurance to cover tort claims arising from the university's operation of the trust property may not be purchased with appropriated funds. See Attorney General Opinions H-1318 (1978); H-742 (1975).

You ask whether the trust property is eligible for exemption from ad valorem property taxes under section 11.11 or any other section of the Tax Code. We conclude that the trust property in question is not taxable.

Article VIII, section 2, of the Texas Constitution authorizes the legislature to exempt from taxation public property used for public purposes. All real and tangible personal property that this state has jurisdiction to tax is taxable unless exempt by law. Tax Code §11.01(a). Effective January 1, 1984, section 11.11 of the Tax Code was amended by adding subsection (e), which provides that

> property that is held or dedicated for the support, maintenance, or benefit of an institution of higher education as defined by section 61.003(7), Texas Education Code, but is not rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state or is not rented or leased to provide private residential housing to members of the public other than students and employees of the state is not taxable.

As now defined by section 61.003(8) of the Education Code, instead of section 61.003(7), an "institution of higher education" includes a public senior college or university such as Southwest Texas State University.

It is our opinion that the property in question is held and dedicated by the terms of the trust for the support and benefit of Southwest Texas State University. The Texas Supreme Court has stated that the word "dedicate" clearly means to appropriate and set apart one's private property to some public use. Viscardi v. Pajestka, 576 S.W.2d 16, 18 (Tex. 1978). Virtually the same definition appears in Ford v. Moren, 592 S.W.2d 385, 390 (Tex. Civ. App. - Texarkana 1979, writ ref'd n.r.e.). Not only is the property belonging to the trust not rented or leased for compensation to a private business enterprise to be used for a purpose not related to the performance of the duties and functions of the state or to provide private residential housing to members of the public, but the terms and conditions of the trust prohibit the trustee from renting or leasing any of the trust's real property. As previously pointed out, the terms of the trust provide that Southwest Texas State University may use and operate the property solely for farm, ranch, and game management, educational, and experimental purposes in connection with the educational activities of the university for the benefit of its students or the general public. Hence, it is our opinion that section 11.11(e) of the Tax Code exempts the trust property from ad valorem taxes.

You ask about other sections of the Tax Code that may exempt the trust property from ad valorem taxes. Therefore, we mention that

section 11.16 provides that farm products, which includes livestock and poultry, in the hands of the producer are exempt from taxation. Also, implements of husbandry used in the production of farm and ranch products are exempt from ad valorem taxation. Tax Code §11.161.

## S U M M A R Y

A state university serving as trustee of a testamentary trust created to make ranch property available to the university to use in its educational programs may spend appropriated funds for permanent improvements and operation of the trust without violating the Texas Constitution or statutes, so long as the expenditure is for a proper public purpose and an adequate consideration. If the terms of the trust prohibit the use of appropriated funds by the trustee, a court has the power to direct or permit the trustee to deviate from terms of the trust that would defeat or substantially impair the accomplishment of the purposes of the trust. The legislature has not authorized the university to purchase general liability or fire and extended coverage insurance on property belonging to a trust that the university operates in connection with its educational activities, and insurance for the trust may not be purchased with appropriated funds. The property of the trust in question is exempt from ad valorem taxation under section 11.11(e) of the Tax Code.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General